26 CV 1964

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

TAMMY BECKMAN, Individually and as Parent and Legal Guardian of Freedom Welch,

Pro se Plaintiffs,

v.

ARTSPACE AFFORDABLE FAMILY HOUSING, L.P., et al.,

Defendants.

UNITED STATES DISTRICT COURT
FILED
SEP 11 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

Case No.: 1:26-cv-00921-LJV

PLAINTIFF'S SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, EXHIBIT LIST OF ADMINISTRATIVE COMPLAINTS, AND NOTICE OF REGULATORY ESCALATION

Plaintiff, Tammy Beckman, appearing pro se individually and on behalf of her minor child, Freedom Welch, respectfully submits this Supplemental Affidavit to place critical factual context, corporate personnel changes, and multi-agency regulatory escalations into the judicial record. This supplemental filing exposes the

Bad-Faith conduct of the Crisis Service Defendants and demonstrates that their Rule 12(b)(6) motion is an attempt to mask severe statutory and constitutional non-compliance.

## I. REVISITED HISTORICAL COMPLAINTS & MULTI-AGENCY COMPLIANCE TIMELINE

Plaintiff has systematically escalated these violations to state and federal governing bodies since September 2025, following a continuous block of ignored meeting requests sent to the Defendants' Director and Board since November 2025. To supplement the record, the following regulatory, enforcement, and oversight agencies have been formally notified and are currently reviewing the actions of the named Defendants:

Federal Enforcement Agencies:

1. U.S. Department of Justice (DOJ) – Housing and Civil Enforcement Section: Reviewing coordinated discrimination, civil rights violations, and the weaponization of emergency mobile crisis resources within affordable housing networks.
2. U.S. Department of Health and Human Services (HHS) – Office for Civil Rights (OCR): Reviewing Title VI and section 504 compliance failures, alongside the unlawful interrogation of a minor child's independent medical and therapeutic providers.

3. Federal Bureau of Investigation (FBI) – Buffalo Field Office: Reviewing systemic, multi-entity civil rights deprivations under color of law (18 U.S.C. § 242) and conspiratorial retaliation.
4. U.S. Department of Homeland Security (DHS): Notified regarding concurrent infrastructural, public safety grant abuses, and facility secure-access breaches.
5. Internal Revenue Service (IRS) – Whistleblower Office / Tax-Exempt & Government Entities Division: Notified regarding potential non-profit compliance violations, financial mischaracterizations, and operational deviations from 501(c)(3) standards.

New York State & Local Oversight Bodies:

1. Office of the New York State Attorney General (NYAG) – Civil Rights Bureau: Reviewing retaliatory housing patterns, systemic consumer fraud, and constitutional overreach by community crisis contractors.
2. New York State Department of Health (DOH): Reviewing foundational mobile crisis team dispatch violations and medical documentation failures dating back to the 2021 denial-of-service complaint.
3. New York State Office of Mental Health (OMH): Reviewing systemic operating-license violations, complete lack of written provider protocol execution, and non-compliance with state crisis intervention models.

4. New York State Justice Center for the Protection of People with Special Needs: Notified regarding the targeted psychological harassment and intentional emotional distress inflicted directly upon a minor child under clinical treatment.

5. New York State Division of Human Rights (DHR): Reviewing underlying discriminatory housing and public accommodation practices.

6. New York State Office of the Welfare Inspector General: Reviewing organizational operational allocation and public funding usage.

7. City of Buffalo Office of Strategic Planning / Buffalo Urban Renewal Agency (BURA): Reviewing structural municipal contract overwatch failures and municipal code compliance.

8. Buffalo Police Department (BPD) Internal Affairs Division: Reviewing the actions of municipal actors working in concert with the crisis team's unconstitutional door-banging and forced entry threats.

9. Relevant State Licensing Boards: Formal complaints pending review against the individual professional licenses of the clinical actors involved in the unauthorized third-party provider interrogations.

## II. RETALIATION AGAINST A PROTECTED FEDERAL WHISTLEBLOWER & CO-CONSPIRATOR RESIGNATIONS

1. Whistleblower Protections: Plaintiff operates under stringent, legally protected federal whistleblower status. Defendants have intentionally attempted to mischaracterize Plaintiff's employment and identity in their motion papers to undermine Plaintiff's credibility and obscure their retaliatory trajectory.

2. Abuse of Courtesy Extension: Plaintiff explicitly granted the Crisis Service Defendants a 30-day courtesy extension to answer the federal complaint in the earnest hope that the organization would honor its regulatory obligations, investigate the key fob security breach, and meet to resolve the dispute. Instead, they utilized this good-faith window to file a motion to dismiss, actively compounding the severe mental anguish and emotional trauma inflicted upon Plaintiff and her daughter.

3. Abrupt Personnel Resignations: Belmont staff member Nichelle Bulls, who is explicitly named in the allegations of targeted retaliation, alongside involved Tenants, abruptly resigned in August 2026. This sudden corporate departure occurred immediately after these entities were formally put on notice that active DOJ, DHS, and FBI regulatory reviews were pending against the operation. This suspicious timing constitutes powerful

circumstantial evidence of conscious guilt, administrative panic, and an active attempt to evade institutional accountability.

## III. FAILURE TO FOLLOW NEW YORK STATE AND FEDERAL CRISIS GUIDELINES

The audited call logs, audio recordings, and case notes reveal that the crisis team completely flipped federal and state emergency mandates on their head:

- Reversing Mandated Protocols: Under federal SAMHSA and New York State OMH guidelines, Mobile Crisis Teams must use non-threatening, plain-clothes de-escalation, prioritize voluntary cooperation, and depart immediately if no imminent life-safety threat exists. They came back and used the threat of police, even after a cease-and-desist letter went out and calls and demand request for a director/board meeting.
-
- The Inversion of Protocol: In 2021, when Plaintiff's daughter legally qualified for and desperately needed emergency care, the Defendants completely abandoned her, necessitating a state health department complaint. Conversely, in 2026, when no crisis existed, they weaponized a false call, used unauthorized electronic key fob methods to breach a secure floor, violently banged on the door, threatened police intervention, and then

retroactively falsified the record by dropping a card the following day to hide their tracks. All this after I filed complaints to state and local courts.

## IV. CONCLUSION

Defendants' Motion to Dismiss represents a bad-faith effort to avoid federal discovery, which would otherwise fully expose their unauthorized security breaches, illegal third-party provider interventions, and the flight of staff members like Nichelle Bulls amidst federal investigations. Plaintiff respectfully requests that this Court take notice of these extensive, ongoing regulatory reviews and deny the motion.

Dated: September 11, 2026

Buffalo, New York

Respectfully submitted,

Tammy Beckman, Plaintiff Pro Se

1219 Main Street, Apt. 508

Buffalo, New York 14209

tamoraleejewelry@gmail.com

EXHIBIT PROOF OF SERVICE & ADMINISTRATIVE NOTICE INDEX

- EXHIBIT A: True and correct copy of Plaintiff's formal administrative letter to the Executive Leadership and Board of Directors of Crisis Services, Inc., dated September 11, 2026, detailing meeting demands ignored since November 2025.
- EXHIBIT B: Electronic mail headers, certified mail logs, and return receipts proving continuous outreach, Notices of Intent, and meeting requests served upon the Defendants throughout 2025 and 2026.
- EXHIBIT C: Certified copies or proof-of-filing documents confirming the submission of complaints and active case reviews pending with the United States Department of Justice (DOJ), NYAG, OMH, DOH, HHS, and the Internal Revenue Service (IRS).

CERTIFICATE OF SERVICE

I, Tammy Beckman, certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that on this 11th day of September, 2026, I served a true and correct copy of the foregoing Plaintiff's Supplemental Affidavit, Exhibit List, and Notice of Regulatory Escalation upon the Defendants' counsel of record via Certified Mail,

Return Receipt Requested, and electronic mail at choldsworth@goldbergsegalla.com:

Christina G. Holdsworth, Esq.

Goldberg Segalla LLP

665 Main Street, Suite 400

Buffalo, New York 14203

Dated: September 11, 2026

Buffalo, New York

Tammy Beckman, Plaintiff Pro Se

## NONPROFIT GOVERNANCE, BOARD OVERSIGHT, AND COMPLIANCE

Plaintiff further requests that the Court recognize the distinction between the ultimate merits of Plaintiff's claims and the organizational-governance issues that remain relevant to discovery and case management. Crisis Services, Inc. and Crisis Services Foundation, Inc. are nonprofit organizations operating through executive leadership, boards of directors, officers, employees, agents, counsel, policies, procedures, and organizational protocols. The existence of nonprofit status does not eliminate the responsibility of an organization and its leadership to maintain appropriate governance, oversight, recordkeeping, compliance, accountability, and procedures for addressing complaints and matters brought to its attention.

Plaintiff has repeatedly requested meaningful engagement with Crisis Services leadership and the Board since 2025. Plaintiff specifically requested that the matters be reviewed at the appropriate executive and Board level rather than continuing an exchange of correspondence without substantive organizational review. Plaintiff's requests included matters concerning organizational conduct, compliance, decision-making, handling of complaints, communications with Plaintiff and members of her household, preservation and identification of records, and the identification of individuals involved in the underlying events.

Plaintiff therefore requests discovery concerning the governance and operational framework applicable during the relevant period, including, to the extent discoverable and applicable:

1. the bylaws of Crisis Services, Inc. and Crisis Services Foundation, Inc.;
2. the current and applicable historical Board policies and governance procedures;
3. the duties and responsibilities assigned to the Board of Directors, Board officers, executive leadership, directors, administrators, and relevant supervisory personnel;
4. policies concerning complaints, grievances, client or household communications, investigations, escalation, and Board-level review;
5. policies concerning retaliation, intimidation, harassment, conflicts of interest, whistleblower complaints, and protected activity, to the extent such policies exist and are applicable;
6. policies governing communications with individuals receiving or connected to Crisis Services programs and services;
7. policies concerning communications with third-party service providers and protected or vulnerable persons;
8. procedures for documenting complaints, telephone calls, referrals, reports, meetings, investigations, and management decisions;

9. procedures governing preservation of records, electronic communications, audio recordings, emails, case records, and other electronically stored information;

10. records identifying the individuals who received, reviewed, investigated, escalated, or made decisions concerning Plaintiff's complaints and communications;

11. Board minutes, committee records, resolutions, or other governance records concerning the subject matter of Plaintiff's complaints, to the extent relevant and discoverable;

12. records reflecting whether Plaintiff's requests for executive or Board-level engagement were received, reviewed, referred, denied, or otherwise addressed;

13. policies and procedures concerning communications made after Plaintiff's cease-and-desist notice; and

14. any applicable policies or protocols governing communications with service providers associated with Plaintiff's daughter and any restrictions concerning disclosure, inquiry, or discussion of Plaintiff or Plaintiff's household.

Plaintiff does not ask the Court at this stage to presume that a particular bylaw or policy was violated. Rather, Plaintiff requests that the applicable governing documents and protocols be identified and produced through appropriate discovery so that the Court and parties can determine what duties, procedures, and responsibilities applied and whether those procedures were followed.

Plaintiff contends that the failure to provide the requested leadership-level review, the failure to meaningfully address repeated requests to confer, the subsequent filing of a dispositive motion, and the communications Plaintiff alleges occurred after her cease-and-desist notice are matters that should be evaluated against the organization's actual bylaws, policies, procedures, and applicable legal obligations rather than characterized without examination of the underlying records.

The attached Crisis Services motion confirms that Crisis Services, Inc. and Crisis Services Foundation, Inc. are appearing as separate named defendants through counsel and that they have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint in lieu of an Answer. Plaintiff respectfully submits that this procedural posture further supports the need for appropriate case management and, where permitted, discovery concerning the factual and organizational issues underlying the allegations and defenses.

Plaintiff therefore requests that the Court permit the parties to address these governance, policy, record-preservation, and organizational-responsibility questions through the appropriate procedural mechanisms and, if appropriate, address them at a Rule 16 conference.

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NEW YORK**

**------------------------------------------------------------------------**

**TAMMY BECKMAN, Individually and as Parent and Legal**

**Guardian of Freedom Welch,**

**Pro Se Plaintiff, Case No. 26-cv-921**

**v.**

**ARTSPACE AFFORDABLE FAMILY HOUSING, L.P.,**

**ARTSPACE AFFORDABLE FAMILY HOUSING GP, LLC,**

**ARTSPACE AFFORDABLE FAMILY HOUSING**

**DEVELOPMENT FUND CORPORATION,**

**ARTSPACE PROJECTS, INC.,**

**BELMONT HOUSING RESOURCES FOR WNY, INC.,**

**BELMONT SHELTER CORPORATION,**

**CITY OF BUFFALO, including the Buffalo Police Department (BPD)**

**and Behavioral Health Team (BHT), and John and Jane Does 1-10,**

**BUFFALO URBAN RENEWAL AGENCY (BURA),**

**CRISIS SERVICES, INC.,**

**CRISIS SERVICES FOUNDATION, INC.**

**ERIE COUNTY DEMOCRATIC COMMITTEE (ECDC),**

**BUFFALO SPECIAL INVESTIGATIONS, LLC,**

**BUFFALO SPECIAL INVESTIGATIONS (BSI SECURITY),**

**COMMUNITY ACTION ORGANIZATION OF WESTERN**

**NEW YORK, INC. (CAO), including the DART Program,**

**Defendants.**

---------------------------------------------------------------------------

**RE: Formal Request for Board of Directors Review, Governance Oversight, and Accountability Regarding Crisis Services Conduct**

Dear Members of the Board of Directors:

I am submitting this formal request for Board review and oversight regarding serious concerns involving the actions of Crisis Services, Inc. and Crisis Services Foundation, Inc.

I previously requested a meeting with the Board of Directors regarding these matters. That request remains outstanding. Due to the seriousness of the allegations, the involvement of crisis response systems, concerns regarding organizational procedures, and the failure to provide an adequate response, Board-level review is warranted.

This request is being made as part of my effort to seek accountability, transparency, and appropriate organizational review before further legal proceedings continue.

# Notice of Claim and Pending Legal Matters

A Notice of Claim has been submitted regarding the conduct of Crisis Services and related events. These matters are now part of ongoing legal proceedings, including a federal claim.

The filing of a Notice of Claim places Crisis Services on formal notice of the allegations and the need to preserve all relevant documents, records, communications, policies, procedures, and evidence.

The Board has a responsibility to ensure that the organization responds appropriately when allegations involve:

- Crisis response failures;
- Potential misuse of crisis intervention systems;
- Privacy and confidentiality concerns;
- Third-party communications;
- Failure to follow established procedures;

- Potential harm caused by organizational actions;
- Failure of internal accountability mechanisms.

# Request for Board Review

I respectfully request that the Board conduct an independent review of the following issues:

## 1. Crisis Response Procedures and Compliance

Review whether Crisis Services personnel followed applicable crisis intervention protocols, including:

- Verification and assessment procedures before dispatch;
- Determination of whether an actual crisis existed;
- De-escalation requirements;
- Least restrictive intervention standards;
- Documentation requirements;
- Supervisor review procedures.

## 2. Improper or Unverified Crisis Reports

Review the process used when crisis calls are received, including:

- How information is verified;
- Whether false or retaliatory reports are identified;
- Whether individuals are protected from misuse of crisis systems;
- Whether appropriate documentation and review occurred.

## 3. Continued Contact After Notice to Cease

Review why Crisis Services continued contact after I provided notice that:

- No crisis existed;
- Intervention was not requested;
- Further contact was not authorized;

- A review and documentation process was requested.

The continuation of contact after notice raises concerns regarding internal procedures and oversight.

## 4. Third-Party Communications and Privacy Concerns

Review communications between Crisis Services and my child's service providers.

Crisis Services was previously aware of my family circumstances because in 2021 my child was hospitalized and I contacted Crisis Services for assistance. Crisis Services was aware that my child is autistic.

Later communications involving my child's service providers regarding me raised concerns regarding:

- Privacy;
- Appropriate boundaries;
- Authorization;
- Confidentiality;
- Use of information obtained through prior contacts.

A complaint regarding these concerns was submitted to the New York State Department of Health.

## 5. Organizational Oversight and Accountability

As a nonprofit organization providing crisis-related services, Crisis Services has an obligation to maintain appropriate governance and oversight.

The Board should review:

- Whether complaints are properly escalated;
- Whether leadership responds appropriately;
- Whether policies are followed consistently;
- Whether corrective action is required;
- Whether individuals affected by crisis interventions have access to meaningful review.

# Request for Formal Board Meeting

I formally request:

1. A meeting with the Board of Directors or designated Board committee;
2. Written confirmation that this request has been received;
3. Identification of the Board member or committee responsible for review;
4. Confirmation that all relevant records have been preserved;
5. A written response addressing the concerns raised.

## Preservation of Records

Please preserve all records related to these matters, including but not limited to:

- Crisis call recordings;
- Intake records;
- Dispatch information;
- Incident reports;
- Employee notes;
- Supervisor reviews;
- Training materials;
- Crisis response policies;
- Internal communications;
- Communications with law enforcement;
- Communications with healthcare or service providers;
- Board communications concerning these complaints.

## Conclusion

This request is made in good faith to obtain transparency, accountability, and appropriate governance review.

The failure to address these concerns at the organizational level, despite prior notice and requests for review, will be considered in the ongoing legal proceedings and any additional administrative or regulatory complaints.

I request a written response within a reasonable timeframe confirming the Board's receipt of this request and the next steps for review.

Respectfully,

Tammy Beckman
Freedom Welch
Pro Se Litigant

Tammy Beckman Freedom Welch
Pro Se Litigant
July 21, 2026
Office of the New York State Attorney General
Charities Bureau
28 Liberty Street
New York, NY 10005

Complaint Regarding Governance and Oversight Failures — Crisis Services, Inc. / Crisis Services Foundation, Inc.

To Whom It May Concern:

I am filing this complaint regarding Crisis Services, Inc. and Crisis Services Foundation, Inc., both of which operate as nonprofit organizations in New York State. This complaint concerns a failure of Board-level governance and accountability following a series of incidents involving the organization's crisis response services.

I previously submitted a written request to the Board of Directors for review of these matters, including a request for a formal Board meeting. That request went unanswered for an extended period, and the organization did not respond substantively until after I filed a claim in federal court.

Statement of Facts

**1. Protected Activity.** In or around November 2025, I engaged in protected activity by reporting a housing issue to my current landlord and by filing tenant complaints regarding conditions at my residence.

**2. False Crisis Report.** Shortly after I engaged in this protected activity, a false report of a mental health crisis was called in regarding my home. No crisis existed at the time of the report.

**3. Entry to Residence.** Crisis Services personnel responded to my residence and were let onto my floor by building management.

**4. On-Scene Conduct.** I informed the responding staff that there was no crisis, that no intervention had been requested, and I asked that they leave contact information at my door rather than proceed further. My daughter, who has a diagnosed condition (autism), became visibly and significantly distressed during this encounter. I calmed my daughter and then contacted the Director of Crisis Services directly, and separately contacted police Internal Affairs to report the incident.

**5. Cease and Desist / Board Meeting Request.** I delivered a written cease-and-desist notice to Crisis Services. That notice also included a request for a meeting with the Board of Directors and with the Director regarding these events.

**6. Repeat Contact.** Days after I delivered that notice, Crisis Services personnel returned to my residence.

**7. Contact with My Daughter's Providers.** Crisis Services subsequently contacted my daughter's service providers seeking information about me. Those providers declined to release information. Crisis Services then called me directly and stated that they had been calling to ask about me.

**8. Notice of Claim.** I thereafter filed a Notice of Claim and made repeated written requests for a meeting with the Board of Directors. I received no substantive response to these requests despite multiple attempts.

**9. No Response Until Federal Filing.** Crisis Services, Inc. and Crisis Services Foundation, Inc. did not respond to my outreach until after I filed a claim in federal court.

**10. Related DOH Complaint.** I separately submitted a complaint to the New York State Department of Health concerning the unauthorized third-party communications with my daughter's service providers.

Requested Action

I request that your office review whether Crisis Services, Inc. and Crisis Services Foundation, Inc. maintained adequate governance oversight of the events described below, and whether complaints escalated to the Board were properly reviewed and addressed.

I request review of whether the organizations' response (or lack of response) to repeated written requests for Board review is consistent with their obligations as New York nonprofit corporations.

I request written confirmation that this complaint has been received and information on how it will be handled.

Preservation of Records

I request that all records related to these matters be preserved, including crisis call recordings, intake and dispatch records, incident reports, staff and supervisor notes, internal communications, communications with my daughter's service providers, communications with law enforcement, and Board communications concerning these complaints.

I am prepared to provide copies of my prior written requests to the Board, my cease-and-desist notice, and my Notice of Claim upon request.

Respectfully,

Tammy Beckman Freedom Welch

Pro Se Litigant

Exhibit 33 I
Proof of Services

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

9589 0710 5270 3015 1192 14

For delivery information, visit our website at www.usps.com®.

Amsterdam, NY 12010
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $0.78 |
| Total Postage and Fees | $6.08 |

0215
89
Postmark Here
CENTRAL PARK STATION FEB 24 2026 BUFFALO, NY 14215-9998
02/24/2026

Sent To Avant Legal
Street and Apt. No., or PO Box No. Tocowaca St Box 389
City, State, ZIP+4®

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

UNITED STATES POSTAL SERVICE.

CENTRAL PARK
170 MANHATTAN AVE
BUFFALO, NY 14215-9998
www.usps.com
02/24/2026 04:05 PM

TRACKING NUMBERS
9589 0710 5270 3015 1192 14

TRACK STATUS OF ITEMS WITH THIS CODE
(UP TO 25 ITEMS)

TRACK STATUS BY TEXT MESSAGE
Send tracking number to 28777 (2USPS)
Standard message and data rates may apply

TRACK STATUS ONLINE
Visit https://www.usps.com/tracking
Text and e-mail alerts available

PURCHASE DETAILS

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Letter | 1 | | $0.78 |
| Amsterdam, NY 12010 | | | |
| Weight: 0 lb 0.40 oz | | | |
| Estimated Delivery Date Mon 03/02/2026 | | | |
| Certified Mail® | | | $5.30 |
| Tracking #: 9589 0710 5270 3015 1192 14 | | | |
| Affixed Postage | | | -$0.78 |
| Affixed Amount: $0.78 | | | |
| Total | | | $5.30 |

Grand Total: $5.30

Credit Card Remit $5.30
Card Name: MasterCard
Account #: XXXXXXXXXXXX1638
Approval #
Transaction #: 031
AID: A0000000042203 Chip
AL: US Debit
PIN: Not Required

Exhibit 33 I

331

9589 0710 5270 3759 6528 00

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Saint Paul, MN 55108

OFFICIAL USE

Certified Mail Fee $ $5.30
0205
39

$0.00

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $ $0.00
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $

Postage $ $1.90

Total Postage and Fees $ $7.20

Postmark Here
MAY 04 2026
695 WASHINGTON ST
ELLICOTT STATION
05/04/2026

Sent To Office of MN Sec of State
Street and Apt. No., or PO Box No. 332 Minnesota Street
City, State, ZIP+4® St Paul MN 55108

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6525 58

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Saint Paul, MN 55101

OFFICIAL USE

Certified Mail Fee $ $5.30
0225
87

$0.00

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $ $0.00
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $

Postage $ $5.04

Total Postage and Fees $ $10.34

Postmark Here
MAR 2 2026
CHEEKTOWAGA
03/02/2026

Sent To Minnesota Attorney General Office
Street and Apt. No., or PO Box No. 445 Minnesota St Ste 1400
City, State, ZIP+4® St Paul MN 55101

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6525 27

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Minneapolis, MN 55487

OFFICIAL USE

Certified Mail Fee $ $5.30
0225
87

$0.00

Extra Services & Fees (check box, add fee as appropriate)
- ☐ Return Receipt (hardcopy) $ $0.00
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $

Postage $ $4.44

Total Postage and Fees $ $9.74

Postmark Here
MAR 02 2026
03/02/2026

Sent To Hennepin County District
Street and Apt. No., or PO Box No. Mary Moriarty c/o 300 South 6th St
City, State, ZIP+4® Minneapolis, MN 55487

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 2562 398

U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Buffalo, NY 14210 OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $5.30 | 0215 |
| $ | $0.00 | 89 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | |
| ☐ Return Receipt (electronic) | $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | MAY - 4 2026 |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $3.28 | |
| $ | | 05/04/2026 |
| Total Postage and Fees | $8.58 | |

Postmark: CENTRAL PARK STATION BUFFALO NY 14215-9998

Sent To: Attorney Greene
Street and Apt. No., or PO Box No.: 701 Seneca St
City, State, ZIP+4®: 14210

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3528 7201 98

U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Buffalo, NY 14203 OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $5.30 | 0205 |
| $ | $0.00 | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | Postmark Here |
| ☐ Return Receipt (electronic) | $ $0.00 | FEB 18 2026 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $3.56 | 02/18/2026 |
| $ | | |
| Total Postage and Fees | $8.86 | |

Postmark: ELLICOTT STATION 695 WASHINGTON ST. BUFFALO NY 14203

Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3528 7262 51

U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Buffalo, NY 14202 OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $5.30 | 0241 |
| $ | $0.00 | 36 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | Postmark Here |
| ☐ Return Receipt (electronic) | $ $0.00 | |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | MAR 24 2026 |
| Postage | $1.90 | 03/24/2026 |
| $ | | |
| Total Postage and Fees | $7.20 | |

Postmark: CAYUGA POST OFFICE

Sent To: BAEC Bar Assoc Erie Cnty
Street and Apt. No., or PO Box No.: 438 Main St 6th Fl
City, State, ZIP+4®: Buffalo NY 14202

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6526 95

U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Buffalo, NY 14202 OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $5.30 | 0205 |
| $ | $0.00 | 32 |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | Postmark Here |
| ☐ Return Receipt (electronic) | $ $0.00 | FEB 26 2026 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $3.00 | 02/27/2026 |
| $ | | |
| Total Postage and Fees | | |

Postmark: ELLICOTT STATION 695 WASHINGTON ST. BUFFALO NY 14203

Sent To: Atty Greene
Street and Apt. No., or PO Box No.: 438 Main St Ste 800
City, State, ZIP+4®: Buffalo NY 14202-3212

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6527

Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Buffalo, NY 14204 OFFICIAL USE

| | | |
|---|---|---|
| Certified Mail Fee | $5.30 | 0205 |
| $ | $0.00 | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | Postmark Here |
| ☐ Return Receipt (electronic) | $ $0.00 | FEB 26 2026 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | |
| ☐ Adult Signature Required | $ $0.00 | |
| ☐ Adult Signature Restricted Delivery | $ | |
| Postage | $2.44 | |
| $ | | 02/27/2026 |
| Total Postage and Fees | $7.74 | |

Postmark: ELLICOTT STATION 695 WASHINGTON ST. BUFFALO NY 14203

Sent To: NYS Bar Association Erie
Street and Apt. No., or PO Box No.: 438 Main St #600
City, State, ZIP+4®: Buffalo NY 14202

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

33

9589 0710 5270 3759 6525 41

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Buffalo, NY 14202 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $5.30 | 0225 |
| $ $0.00 | 87 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ $0.00 | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery $ $0.00 | MAR 02 2026 |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ $3.56 | |
| Total Postage and Fees $8.86 | 03/02/2026 |

Sent To: HEO (Ste
Street and Apt. No., or PO Box No.: 350 Pearl St (301)
City, State, ZIP+4®: Buffalo NY 14203

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6525 65

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Buffalo, NY 14202 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $5.30 | 0225 |
| $ $0.00 | 87 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ $0.00 | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery $ $0.00 | MAR 02 2026 CHEEKTOWAGA |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ $3.28 | |
| Total Postage and Fees $8.58 | 03/02/2026 |

Sent To: NYS Attorney General
Street and Apt. No., or PO Box No.: 350 Main place Tower
City, State, ZIP+4®: Buffalo N.Y. 14202

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6526 57

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Albany, NY 12224 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $5.30 | 0225 |
| $ $0.00 | 87 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ $0.00 | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery $ $0.00 | MAR 02 2026 CHEEKTOWAGA |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ $4.44 | |
| Total Postage and Fees $9.74 | 03/02/2026 |

Sent To: NYS attorney General
Street and Apt. No., or PO Box No.: The Capitol
City, State, ZIP+4®: Albany NY 12224-0341

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6525 72

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Albany, NY 12231 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $5.30 | 0225 |
| $ $0.00 | 87 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ $0.00 | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery $ $0.00 | MAR 02 2026 CHEEKTOWAGA |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ $3.28 | |
| Total Postage and Fees $8.58 | 03/02/2026 |

Sent To: NY Dept of State Div of CORP
Street and Apt. No., or PO Box No.: One Commerce Plaza 99 Washington Ave
City, State, ZIP+4®: STE 1100 11th Floor Albany NY 12231

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6526 02

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Albany, NY 12236 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $5.30 | 0225 |
| $ $0.00 | 87 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ $0.00 | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery $ $0.00 | MAR 02 2026 CHEEKTOWAGA |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ $4.14 | |
| Total Postage and Fees $9.44 | 03/02/2026 |

Sent To: Office of NY Comptroller
Street and Apt. No., or PO Box No.: Division 110 State Street
City, State, ZIP+4®: Albany NY 12236

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6525 96

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Sacramento, CA 95811 OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $5.30 | 0225 |
| $ $0.00 | 87 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ $0.00 | |
| ☐ Return Receipt (electronic) $ $0.00 | Postmark Here |
| ☐ Certified Mail Restricted Delivery $ $0.00 | MAR 02 2026 |
| ☐ Adult Signature Required $ $0.00 | |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ $3.84 | |
| Total Postage and Fees $9.14 | 03/02/2026 |

Sent To: The Dept of Financial Protection
Street and Apt. No., or PO Box No.: 651 Bannon Street STE 300
City, State, ZIP+4®: Sacramento Ca 95811

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

331

9589 0710 5270 3759 6525 89

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

New York, NY 10004
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $ | $5.30 |
| | $0.00 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ | $0.00 |
| ☐ Return Receipt (electronic) $ | $0.00 |
| ☐ Certified Mail Restricted Delivery $ | $0.00 |
| ☐ Adult Signature Required $ | $0.00 |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ | $3.84 |
| Total Postage and Fees $ | $9.14 |

Postmark Here: 0225 87 — JUL 02 2026 — 07/02/2026

Sent To: Department of Financial Serv
Street and Apt. No., or PO Box No.: 1 State Street
City, State, ZIP+4®: New York NY 10004

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3760 8969 72

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Albany, NY 12203
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $ | $5.55 |
| | $0.00 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ | $0.00 |
| ☐ Return Receipt (electronic) $ | $0.00 |
| ☐ Certified Mail Restricted Delivery $ | $0.00 |
| ☐ Adult Signature Required $ | $0.00 |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ | $3.72 |
| Total Postage and Fees $ | $9.27 |

Postmark Here: 0144 15 — RENSSELAER NY 12144 — JUL 17 2026 — 07/17/2026

Sent To: NYed O/G Field
City, State, ZIP+4®: Albany 12203

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6527 70

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Albany, NY 12224
OFFICIAL USE

| | |
|---|---|
| Certified Mail Fee $ | $5.30 |
| | $0.00 |
| Extra Services & Fees *(check box, add fee as appropriate)* | |
| ☐ Return Receipt (hardcopy) $ | $0.00 |
| ☐ Return Receipt (electronic) $ | $0.00 |
| ☐ Certified Mail Restricted Delivery $ | $0.00 |
| ☐ Adult Signature Required $ | $0.00 |
| ☐ Adult Signature Restricted Delivery $ | |
| Postage $ | $1.90 |
| Total Postage and Fees $ | $7.20 |

Postmark Here: 0205 39 — ELLIOTT STATION 695 WASHINGTON ST BUFFALO NY 14203 — MAY 04 2026 — 05/04/2026

Sent To: M. Kathy Hochul
Street and Apt. No., or PO Box No.: NYS Capital Bld
City, State, ZIP+4®: Albany NY 12224

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

337

9589 0710 5270 3759 6527 94

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE — New York, NY 10278

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (*check box, add fee as appropriate*) | |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | $0.00 |
| Postage | $2.17 |
| Total Postage and Fees | $7.47 |

Postmark Here: ELLICOTT STATION, 695 WASHINGTON ST., BUFFALO NY 14203 — MAY 04 2026 — 0205

HUD 019

Sent To: US Dept of Housing
Street and Apt. No., or PO Box No.: 26 Federal Plaza
City, State, ZIP+4®: NY NY 10278

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6527 32

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE — Buffalo, NY 14202

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (*check box, add fee as appropriate*) | |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $2.44 |
| Total Postage and Fees | $7.74 |

Postmark Here: CAYUGA POST OFFICE 14241-9998 — MAR 24 2026 — 0241 36 — 03/24/2026

Sent To: HOME
Street and Apt. No., or PO Box No.: 542 Main Street
City, State, ZIP+4®: Buffalo NY 14202

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6527 87

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE — Buffalo, NY 14203

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (*check box, add fee as appropriate*) | |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $1.90 |
| Total Postage and Fees | $7.20 |

Postmark Here: ELLICOTT STATION, 695 WASHINGTON ST., BUFFALO NY 14203 — MAY 04 2026 — 0205 39

HUD 016

Sent To: US Dept of Housing
Street and Apt. No., or PO Box No.: 300 Pearl Street Ste 300
City, State, ZIP+4®: Buffalo NY 14203

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6527 25

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE — Buffalo, NY 14212

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (*check box, add fee as appropriate*) | |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | |
| ☐ Adult Signature Restricted Delivery | $0.00 |
| Postage | $2.17 |
| Total Postage and Fees | $7.47 |

Postmark Here: CAYUGA POST OFFICE 14241-9998 — MAR 24 2026 — 0241 36 — 03/24/2026

Sent To: BSI Buffalo Special [illegible]
Street and Apt. No., or PO Box No.: 700 Broadway St
City, State, ZIP+4®: Buffalo NY 14212

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3528 7262 20

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE — Buffalo, NY 14214

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (*check box, add fee as appropriate*) | |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $1.90 |
| Total Postage and Fees | $7.20 |

Postmark Here: CAYUGA POST OFFICE 14241-9998 — MAR 24 2026 — 0241 36 — 03/24/2026

Sent To: CAO of WNY
Street and Apt. No., or PO Box No.: 45 Jewett Ave Ste 180
City, State, ZIP+4®: Buffalo NY 14214

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6535 31

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE — Buffalo, NY 14207

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (*check box, add fee as appropriate*) | |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | |
| Postage | $2.44 |
| Total Postage and Fees | $7.74 |

Postmark Here: CAYUGA POST OFFICE — MAR 24 2026 — 0241 36 — 03/24/2026

Sent To: Crisis Services Erie County
Street and Apt. No., or PO Box No.: 100 River Road Ste 300
City, State, ZIP+4®: Buffalo NY 14207

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

337

9589 0710 5270 3528 7262 37

## U.S. Postal Service™ CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Buffalo, NY 14202

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $2.17 |
| Total Postage and Fees | $7.47 |

Postmark Here: CAYUGA POST OFFICE 0241 36 MAR 24 2026 — 03/24/2026 14241-9998

Sent To: City of Buffalo (Dec Legal) (Dept)

Street and Apt. No., or PO Box No.: 65 Niagara Square

City, State, ZIP+4®: Buffalo NY 14202

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3528 7262 44

## U.S. Postal Service™ CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Buffalo, NY 14214

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $2.17 |
| Total Postage and Fees | $7.47 |

Postmark Here: CAYUGA PO 0241 36 MAR 24 2026 — 03/24/2026 14241-9998

Sent To: Belmont Housing Resources

Street and Apt. No., or PO Box No.: 2393 Main St

City, State, ZIP+4®: Buffalo NY 14214

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6526 64

## U.S. Postal Service™ CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Buffalo, NY 14202

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $3.84 |
| Total Postage and Fees | $9.14 |

Postmark Here: CHEEKTOWAGA 0225 87 MAR 2026 — 03/02/2026

Sent To: City of Buffalo Board of Ethics

Street and Apt. No., or PO Box No.: 65 Niagara Square RM 201

City, State, ZIP+4®: Buffalo NY 14202

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 4195 1993 17

## U.S. Postal Service™ CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Buffalo, NY 14214

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $1.67 |
| Total Postage and Fees | $6.97 |

Postmark Here: ELLICOTT STATION 65 WASHINGTON ST. BUFFALO NY 14203 0205 30 2026

Sent To: Belmont Housing Resource

Street and Apt. No., or PO Box No.: 2393 Main Street Buffalo NY 14214

City, State, ZIP+4®:

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

9589 0710 5270 3759 6528 31

## U.S. Postal Service™ CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Buffalo, NY 14202

| | |
|---|---|
| Certified Mail Fee | $5.30 |
| $ | $0.00 |
| Extra Services & Fees (check box, add fee as appropriate) | |
| ☐ Return Receipt (hardcopy) | $ $0.00 |
| ☐ Return Receipt (electronic) | $ $0.00 |
| ☐ Certified Mail Restricted Delivery | $ $0.00 |
| ☐ Adult Signature Required | $ $0.00 |
| ☐ Adult Signature Restricted Delivery | $ |
| Postage | $1.90 |
| Total Postage and Fees | $7.20 |

Postmark Here: ELLICOTT STATION 65 WASHINGTON ST. BUFFALO NY 14203 0205 39 MAY 04 2026 — 05/04/2026

Sent To: US attorneys office

Street and Apt. No., or PO Box No.: 138 Delaware Ave

City, State, ZIP+4®: Buffalo NY 14202

PS Form 3800, January 2023 PSN 7530-02-000-9047 See Reverse for Instructions

**TAMMY BECKMAN**
1219 Main Street, Apt. 508
Buffalo, New York 14209

**September 11, 2026**

**VIA EMAIL / CERTIFIED MAIL**

**TO: CRISIS SERVICES, INC.**
Executive Leadership and Board of Directors

## RE: REQUEST FOR GOOD-FAITH MEETING TO CONFER, BOARD-LEVEL ENGAGEMENT, GOVERNANCE REVIEW, AND RECORD PRESERVATION

Dear Crisis Services:

Thank you for your response. I appreciate that Crisis Services has now responded, and I am requesting an opportunity to meet and confer regarding the outstanding matters I have previously raised.

I have requested a meeting with Crisis Services leadership and the Board since approximately November 2025. Those requests have been made through multiple channels, including in-person delivery, mail, email, telephone communications, and written correspondence. The request remains important because the matters raised concern organizational policies, oversight, compliance, accountability, decision-making, recordkeeping, communications, and the handling of matters involving me and my household.

Rather than continuing to exchange correspondence without an opportunity for direct organizational discussion, I have repeatedly requested a good-faith conference with the appropriate executive and Board-level representatives. I remain willing to participate constructively and attempt to identify what can be resolved, clarified, or narrowed.

I also previously provided additional time to Crisis Services counsel to respond concerning the federal matter. Despite that accommodation and my continuing efforts to confer, the requested substantive organizational meeting did not occur, and Crisis Services subsequently proceeded with a motion to dismiss in the federal action.

I therefore again request that Crisis Services identify the appropriate executive or administrative representative who will participate, whether a Board member or Board-designated representative will participate, available dates and times, and whether the meeting can be documented and followed by a written summary identifying agreed-upon next steps and matters requiring further response.

## NONPROFIT GOVERNANCE AND BOARD RESPONSIBILITIES

Because Crisis Services and Crisis Services Foundation operate as nonprofit organizations, I am also requesting identification of the governing documents and organizational protocols applicable during the relevant period.

I am not asking Crisis Services to concede that a particular bylaw or policy was violated. I am requesting the governing documents so that the applicable responsibilities can be accurately determined.

Please preserve and identify, to the extent applicable and legally discoverable:

- bylaws and amendments;
- Board rules and governance policies;
- Board committee charters;
- conflict-of-interest policies;
- whistleblower policies;
- complaint and grievance procedures;
- investigation procedures;
- retaliation and anti-intimidation policies;
- privacy and confidentiality policies;
- records-retention policies;
- evidence-preservation procedures;
- executive and Board escalation procedures;
- procedures for complaints concerning organizational leadership;
- procedures governing communications with individuals and service providers;
- policies concerning protected or vulnerable persons; and
- procedures governing cease-and-desist communications and requests for discontinuation of contact.

I further request identification of the Board members, Board officers, executive leadership, directors, administrators, compliance personnel, supervisors, complaint investigators, and other individuals responsible for receiving, reviewing, escalating, investigating, or making decisions concerning my prior complaints and communications.

## RECORDS AND IDENTIFICATION OF PERSONS

I continue to request the relevant files, records, communications, emails, telephone records, audio recordings, case records, referral records, internal communications, complaint records, investigation records, notes, reports, policies, and other materials concerning the matters I have raised.

I also request identification of the persons whose information, statements, communications, actions, or decisions were relied upon in making factual assertions concerning me or my household.

These requests are important because the underlying records and identities are necessary to understand what occurred and to determine what organizational policies and procedures applied.

## COMMUNICATIONS AFTER CEASE-AND-DESIST NOTICE

I further request preservation of records concerning communications that occurred following my cease-and-desist notice.

Following that notice, communications occurred in which my daughter's name was referenced in circumstances that I perceived as retaliatory or intimidating. I further contend that, instead of meeting with me concerning the matters I had repeatedly raised with Crisis Services leadership and the Board, communications were made to service providers associated with my daughter and questions concerning me were reportedly raised with those providers.

I request that all records concerning those communications be preserved, including emails, telephone records, notes, case records, referrals, internal communications, and the identities of persons who initiated, authorized, directed, received, or participated in those communications.

## GOVERNMENTAL AND OVERSIGHT MATTERS

These matters are also being addressed through appropriate governmental and oversight channels.

Federal filings were submitted in May and June 2026. I have continued submitting timelines, audio recordings, emails, correspondence, records, and supporting evidence to appropriate reviewing authorities.

I have also submitted matters concerning civil-rights-related issues and governmental or agency conduct dating back to approximately 2021 to appropriate New York State and federal oversight authorities. Certain matters involving the New York State Department of Health and mental-health-related oversight are being revisited or reviewed.

I am continuing to cooperate with those independent processes and to provide evidence as appropriate.

I have also submitted information concerning recent communications involving unidentified callers who allegedly referenced or purported to have a federal law-enforcement affiliation. I am preserving and submitting the available audio, telephone, email, and other records through the appropriate channels.

These separate governmental matters are not a substitute for the requested Crisis Services meeting, nor are they intended to interfere with this federal litigation.

## PRESERVATION OF RECORDS

Please preserve all potentially relevant records, including:

- emails;
- telephone logs and call records;
- audio recordings;
- text or electronic communications;
- internal memoranda;
- complaint records;
- case records;
- referral records;
- investigation materials;
- Board minutes and agendas;
- committee records;
- policies and procedures;
- personnel or organizational records identifying responsible decision-makers;
- communications with third-party service providers;
- records concerning my daughter or household where legally relevant and discoverable; and
- electronically stored information concerning the matters raised.

I recognize that certain information may be subject to privacy, confidentiality, privilege, or statutory restrictions. My request is therefore for preservation and appropriate identification of responsive records, not unrestricted disclosure of protected information.

## GOOD-FAITH REQUEST TO CONFER

My preference remains to resolve and clarify matters through direct communication where possible.

I am therefore again requesting a good-faith meeting with Crisis Services executive leadership and appropriate Board-level representation.

For clarity, this request does not waive, withdraw, limit, release, or replace any pending federal claim, administrative complaint, governmental submission, record request, whistleblower protection, statutory right, or other legal or equitable remedy.

I also ask that this correspondence be preserved as part of the record concerning my repeated requests for Board and executive engagement since 2025 and my continuing efforts to obtain a substantive organizational response.

Please confirm receipt and provide available meeting dates.

Thank you,

**Tammy Beckman**
1219 Main Street, Apt. 508
Buffalo, New York 14209
tamoraleejewelry@gmail.com

(Exhibit 9)

This brochure is intended to be used as a source for general information and is not provided as legal advice.

A Guide to Minnesota's Charities Laws is written and published by the Minnesota Attorney General's Office.

This document is available in alternative formats to individuals with disabilities by calling
(651) 296-3353 (Twin Cities Calling Area), (800) 657-3787 (Outside the Twin Cities),
or through the Minnesota Relay Service at (800) 627-3529.

The Minnesota Attorney General's Office values diversity and is an equal opportunity employer.

**Office of Minnesota Attorney General Keith Ellison**
445 Minnesota Street, Suite 1400, St. Paul, MN 55101
(651) 296-3353 (Twin Cities Calling Area)
(800) 657-3787 (Outside the Twin Cities)
(800) 627-3529 (Minnesota Relay)
*www.ag.state.mn.us*

**EXECUTIVE OVERSIGHT BRIEFING & COMPREHENSIVE FACT SHEET**

**DOCUMENT TYPE:** Universal Multi-Agency Regulatory & Public Accountability Record

**DATE OF ISSUANCE:** September 7, 2026

**PROPERTY AT ISSUE:** 1219 Main Street (Artspace Buffalo Lofts), Buffalo, NY 14209

**MANAGING ENTITY / HOUSING OPERATOR:** Belmont Housing Resources for WNY, Inc.

**REPORTING RESIDENT:** Tammy Beckman, Unit 508, 1219 Main Street, Buffalo, NY 14209

**PRIMARY OFFICIAL REFERENCE**

## I. EXECUTIVE SUMMARY & JURISDICTIONAL STATEMENT

This document compiles a verified, multi-point record of regulatory noncompliance, physical safety and habitability hazards, unaddressed common-area violence, and financial disparities at 1219 Main Street.

This facility was established as a federally assisted, tax-exempt, HUD-subsidized artist live/work community. The factual record demonstrates an operational divergence from its founding public mission: resident artists face steep rent increases and retaliatory harassment for reporting safety issues, while publicly funded management entities command substantial executive salaries and fail to maintain basic security, fire, and health standards.

## II. KEY PARTIES & GOVERNING ADMINISTRATIVE ENTITIES

- **Complainant:** Tammy Beckman (Artist Tenant, Unit 508, residing since September 2024; accompanied by protected daughter, Freedom Welch, and documented service animal, Sam).
- **Housing Operator & Development Entity:** Belmont Housing Resources for WNY, Inc. / Artspace Buffalo.
- **Key Executive Officers of Record (IRS Form 990 / Nonprofit Explorer Disclosures):**
    - **Michael D. Riegel**, President: $196,021 base compensation; $25,080 other compensation; Total: $221,101.
    - **Brad Packard**, VP of Development / Executive Leadership: $151,821 base compensation; $7,620 other compensation; Total: $159,441.
    - **Aaron Hejmowski**, CFO / Board Treasurer: $148,067 base compensation; $7,470 other compensation; Total: $155,537.

    - **Pamela Berger**, Vice President / Secretary: $135,523 base compensation; $13,283 other compensation; Total: $148,806.
    - **Joyelle Tedeschi**, VP of Housing: $121,182 base compensation; $20,846 other compensation; Total: $142,028.
    - **Uncompensated Governing Board of Directors:** Bruce C. Baird, Ed Negron, Elizabeth Huckabone, Rodney Richardson, Thomas Ulbrich, Jill Szalach, Kelly Patterson.

- **On-Site Operational Personnel Identified in Complaints (2024–2026):**
    - Brenda Decker, Property Operations / Management Leadership.
    - Jackee Lewis, Property Management.
    - Nichelle, Former Property Manager (resigned during tenure).
    - Brad, On-Site Property Manager (successor).
    - Neal, Maintenance Staff.
- **Contracted Security Contractor:** BSI Security, Inc.

## III. FACTUAL RECORD OF HABITABILITY, SAFETY, AND LEASE VIOLATIONS

### 1. Physical Infrastructure, Fire Codes & Health Hazards

- **Basement & Egress Obstructions:** Basement common storage areas are congested with discarded mattresses, furniture, and abandoned appliances, impeding emergency exit corridors, rear elevator pathways, and utility meters.
- **Corridor Violations & False Alarms:** Unsecured maintenance equipment (ladders) and unauthorized tenant activities (hallway spray-painting and open smoking) routinely compromise indoor air quality and trigger building-wide fire alarms.
- **Corridor Biohazards:** Recurring discovery of discarded hypodermic needles and drug paraphernalia on property lawns and perimeter walkways, resulting in municipal 311 complaints and Buffalo Fire Department/EMS hazardous-waste responses.
- **Structural Neglect:** Ongoing roof leaks and inadequate cleaning contractor oversight.

### 2. Access-Control Breakdown & Common-Area Security

- **Compromised Building Access:** Documented physical access vulnerabilities, including defective exterior door latches allowing outside, non-resident entry into restricted residential corridors.
- **Unauthorized Occupancy:** Unvetted individuals sleeping and staging mattresses in stairwells, hallways, and elevator areas.
- **Security Guard Misconduct (BSI Security, Inc.):** Contracted guards observed sleeping on post, smoking marijuana while on duty, failing to maintain visitor sign-in logs, and permitting unauthorized guests access to residential floors.

**3. Unpermitted Commercial Operations in Residential Units**

- **Apartment 509 (Commercial Hair Salon / Ken Cornell d/b/a "Hair by Ken"):** Operation of a client-facing hair salon within a residential unit in direct breach of standard lease covenants and City of Buffalo zoning ordinances. Generates constant unvetted foot traffic, water pressure disruptions, and airborne salon chemical fumes exhausting into common corridors and adjacent units.
- **Unlicensed Food Operations:** Unpermitted preparation and sale of meals ("selling dinners") out of residential apartments without required Erie County Department of Health permits or commercial kitchen inspections.
- **Commercial Inventory Storage:** Allegations concerning maintenance personnel utilizing building storage space to store and stage household goods and mattresses for online resale (Facebook Marketplace).

**4. Documented Common-Area Violence, Menacing, and Harassment**

- **Apartment 505:** Documented history of hallway altercations directly outside Unit 508, aggressive loitering, persistent animal noise disturbances, and a prior stabbing/domestic violence incident.
- **Apartment 507:** Direct verbal threats of physical assault ("fuck me up") directed at complainant in April 2026 inside the management office and common areas, open marijuana smoking in hallways, vehicle entrance blocking, and package interference.
- **Apartment 509:** Targeted wall-banging against Unit 508 to disrupt professional film and audio editing sessions, derogatory slurs, and bad-faith threats to weaponize police reporting.

## IV. SYSTEMIC ADMINISTRATIVE FAILURES & UNLAWFUL RETALIATION

- **Constructive Eviction & Retaliatory Lease Action:** Following complainant's formal grievances, cease-and-desist filings, and agency disclosures, management issued a

retaliatory notice of lease termination against Unit 508 without required Belmont Housing authorization, in direct violation of **New York Real Property Law § 223-b**.

- **Selective Lease Enforcement:** Management has aggressively targeted complaining artists while completely ignoring chronic, documented violent altercations, open drug offenses, and commercial business violations committed by favored occupants in Units 505, 507, and 509.
- **Breach of Confidentiality & Stigmatization:** On-site management and maintenance leaked private tenant complaints and federal background information to neighboring tenants, prompting retaliatory confrontations. Furthermore, legitimate tenant safety grievances are systematically dismissed by labeling complaining tenants as "mental."
- **Suppression of Artistic Mission:** Gatekeeping communal gallery spaces, tearing down lawfully posted dog-walking schedules designed to prevent corridor pet conflicts, damaging and slashing complainant's displayed artwork, and rejecting formal, compliant fiscal sponsorship frameworks (e.g., Arts Access Inc.).

## V. GOVERNING LEGAL STATUTES & REGULATORY VIOLATIONS

- **Statutory Warranty of Habitability (NY Real Property Law § 235-b):** Failure to maintain premises free from chemical fumes, violent disturbances, and compromised security.
- **Retaliatory Eviction Prohibited (NY Real Property Law § 223-b):** Unlawful retaliation against a tenant for making good-faith complaints to government authorities and code enforcement.
- **Falsely Reporting an Incident (NY Penal Law § 240.50):** Criminal liability for initiating bad-faith, baseless crisis and police dispatches.
- **HUD Physical Condition & Management Standards (24 C.F.R. § 5.703):** Federal mandates requiring decent, safe, and sanitary housing conditions in federally subsidized housing.
- **Nonprofit Integrity & Tax-Exempt Purpose (26 U.S.C. § 501(c)(3) & NY Not-for-Profit Corp. Law §§ 112, 715):** Prohibition against operational noncompliance, private benefit, and the divergence of publicly subsidized assets from approved charitable purposes.

## VI. MULTI-AGENCY SUBMISSION & INVESTIGATIVE STATUS

The complete evidentiary record—including audio/video files, date-stamped logs, police reports, and correspondence—was formally submitted as of **September 1, 2026**, to the following entities:

**MULTI-AGENCY REGULATORY AND OVERSIGHT ESCALATION MATRIX**

**DATE OF RECORD:** September 7, 2026

**MATTER:** 1219 Main Street (Artspace Buffalo Lofts), Buffalo, NY 14209

**COMPLAINANT / REPORTING PARTY:** Tammy Beckman, Unit 508

**PRIMARY LOCAL POLICE REFERENCE:** Buffalo Police Department (B-District, Incident #26-1110571)

## OFFICIAL TRACKING OF ACTIVE REGULATORY & INVESTIGATIVE INTAKES

- **New York State Office of the Attorney General (NYAG) & Department of State (DOS):**
  - **Scope:** Civil Rights Bureau, Charities Bureau, and Division of Licensing Services (DOS).
  - **Status:** Active inquiry formally extended regarding systemic civil rights deprivations, discriminatory gatekeeping of subsidized artist facilities, breach of nonprofit fiduciary governance (NY Not-for-Profit Corporation Law §§ 112, 715), and unlicensed commercial appearance enhancement/salon operations.
- **Internal Revenue Service (IRS):**
  - **Scope:** Exempt Organizations Division / Whistleblower Office.
  - **Status:** Direct intake engaged regarding 501(c)(3) organizational compliance, substantial executive compensation disclosures (Form 990), private benefit/ inurement, and the unauthorized operation of commercial businesses within subsidized tax-exempt housing assets.
- **New York State Office of the Inspector General (NY OIG) & Minnesota OIG:**
  - **Scope:** Inter-agency state funding integrity and parent non-profit entity oversight.
  - **Status:** Consolidated intake opened to review the operational diversion of the Artspace program mandate, state housing subsidy disbursements, and corporate parent governance. Full consolidated timeline requested and scheduled for transmission upon completion of multi-agency intake.
- **Federal Bureau of Investigation (FBI) — Buffalo Field Office:**
  - **Scope:** Public Corruption / Civil Rights / Criminal Impersonation Intake.

- **Status:** Local intake reviewing recorded telephone audio, call records, and voicemails regarding the criminal impersonation of a federal law enforcement officer (18 U.S.C. § 912), witness intimidation, and retaliatory threats.

- **U.S. Department of Housing and Urban Development — Office of Inspector General (HUD-OIG):**
  - **Scope:** Office of Fair Housing and Equal Opportunity (FHEO) & Program Compliance.
  - **Status:** Regulatory review evaluating tenant selection integrity, alleged nepotistic unit distributions, Low-Income Housing Tax Credit (LIHTC) covenants, and ongoing violations of HUD Physical Condition & Safety Standards (24 C.F.R. § 5.703).
- **U.S. Department of Homeland Security — Office of Inspector General (DHS-OIG):**
  - **Scope:** Oversight / Fraud, Waste, and Abuse / Inter-Agency Referral.
  - **Status:** Active referral regarding allegations of fraudulent citizenship/immigration schemes operating out of the residential facility, security perimeter failures, and suspicious communications.
- **U.S. Department of Justice (DOJ) — Civil Rights Division:**
  - **Scope:** Housing and Civil Enforcement Section.
  - **Status:** Comprehensive intake opened regarding patterns and practices of housing discrimination, hostile housing environment under the Fair Housing Act (Title VIII), retaliatory eviction actions (NY Real Property Law § 223-b), and the coordinated weaponization of emergency services against a protected tenant.

## CONSOLIDATED EVIDENCE FILE STATUS

- **Date of Master Submission:** July 2026, September 1, 2026., Sept 8,2026
- Pre Intake interview WPA 09/15/2025 Washington DC
- **Preserved Exhibits Transmitted:** Timestamped audio/video files (hallway altercations, management office confrontation, access point breaches, recorded voicemails), photographic exhibits of slashed artwork, BPD Incident Verification Card (#26-1110571), and IRS Form 990 compensation comparative charts.
- **Preservation Status:** Active spoliation warnings remain in effect for all physical logs, electronic messages, and surveillance footage held by Belmont Housing Resources for WNY, BSI Security, Inc., and individual respondents.

## VII. CERTIFICATION & PRESERVATION DIRECTIVE

All parties, corporate entities, and agencies receiving this document are instructed to preserve all Electronically Stored Information (ESI), surveillance video, dispatch records, key-card logs, and incident reports. Spoliation of evidence will be subject to immediate sanctions in ongoing judicial and regulatory proceedings.

**Submitted By:**

Tammy Beckman

1219 Main Street, Unit 508, Buffalo, NY 14209

September 7, 2026

**AFFIRMATIVE STATEMENT ON WHISTLEBLOWER PROTECTIONS AND UNLAWFUL RETALIATION**

Under federal and New York State law, any adverse housing or administrative action executed against a tenant in temporal proximity to verified, good-faith reporting constitutes unlawful retaliation and a constructive deprivation of civil rights. Pursuant to **New York Real Property Law § 223-b**, a landlord, property manager, or housing operator is strictly prohibited from serving a notice to quit, altering terms of tenancy, or selectively enforcing rules against a resident for reporting health, safety, fire code, or criminal violations to governmental oversight bodies; where an adverse notice—such as an unauthorized lease termination—is served following such disclosures, the statute establishes a binding legal presumption that the action is retaliatory, shifting the evidentiary burden entirely upon management to prove a legitimate, non-retaliatory basis.

Concurrently, under **Section 818 of the federal Fair Housing Act (42 U.S.C. § 3617)**, federal grantee anti-reprisal mandates (**41 U.S.C. § 4712**), and the **False Claims Act (31 U.S.C. § 3730(h))**, operators of federally assisted, HUD-subsidized, and tax-exempt housing are legally barred from coercing, intimidating, threatening, or harassing individuals who disclose gross mismanagement, physical hazards, or civil rights noncompliance to Inspector General offices, the Department of Justice, or regulatory authorities. Consequently, bad-faith emergency dispatches, retaliatory wall-banging, the tolerated discharge of hazardous chemical fumes, and selective termination notices issued against Unit 508 directly following active submissions to HUD-OIG, the NYAG, the IRS, and the DOJ represent an actionable, bad-faith pattern of retaliatory constructive eviction that is legally void and subject to immediate administrative, statutory, and civil sanctions.

**TAMMY BECKMAN**
1219 Main Street, Unit 508
Buffalo, New York

**September 7, 2026**

**VIA CERTIFIED MAIL / EMAIL / HAND DELIVERY**

**TO:** Property Owner / Property Management, 1219 Main Street, Buffalo, New York

**AND TO:** Tenants, Tenant Representatives, Tenant Association Representatives, Security Personnel, Business Operators, Guests, and any other persons acting in connection with the premises

## RE: FORMAL CEASE-AND-DESIST NOTICE – HARASSMENT, THREATS, FALSE REPORTS, FALSE CALLS, RETALIATION, INTERFERENCE WITH TENANT RIGHTS AND ARTISTIC WORK, SELECTIVE ENFORCEMENT, LEASE COMPLIANCE, AND PRESERVATION OF EVIDENCE

I am providing this formal notice to place the owner, management, tenants, tenant representatives, security personnel, business operators, guests, and other persons associated with 1219 Main Street on notice that I object to and demand the immediate cessation of any harassment, intimidation, threats, retaliation, knowingly false reports, false emergency or crisis calls, interference with my lawful use of my apartment, interference with my artistic work, damage or removal of artwork, unauthorized interference with my service dog, and coordinated or retaliatory conduct directed toward me, my daughter, **Sam, my service dog**, or persons working with me.

This notice is also intended to establish a clear record concerning communications and incidents in which **my name, my daughter's name, Sam's presence, my apartment, my artistic activities, my work, or my presence at the property** have been discussed, reported, characterized, or communicated to management, police, security, tenants, governmental agencies, or other third parties.

# 1. IMMEDIATE CEASE-AND-DESIST DEMAND

All tenants, guests, business operators, representatives, and other persons are demanded to **cease and desist from harassment, intimidation, threats, unwanted confrontations, retaliation, interference, surveillance intended to intimidate, coordinated communications, knowingly false allegations, and knowingly false reports** concerning me, my daughter, Sam, my service dog, or my lawful activities.

If there is a legitimate lease, safety, maintenance, noise, security, or property-management concern, it should be reported truthfully through the appropriate management or governmental channel and handled through the applicable procedures.

It is not acceptable to manufacture, exaggerate, coordinate, or circulate allegations for the purpose of intimidating me, damaging my reputation, interfering with my tenancy, interfering with my work, provoking police or emergency responses, or creating a false record concerning my conduct.

I specifically demand that there be no further **false calls, false crisis reports, knowingly false police reports, false allegations of criminal conduct, or communications designed to cause law enforcement, security personnel, emergency personnel, management, or other third parties to take action against me based upon information the reporting person knows to be false or baseless.**

New York Penal Law § 240.50 addresses certain knowingly false reports and false information provided to law enforcement and other qualifying agencies. Whether a particular incident satisfies the statutory elements is ultimately a determination for the appropriate authorities and courts.

I therefore expressly preserve my right to provide police and other appropriate authorities with evidence concerning any report that I reasonably believe was knowingly false, fabricated, or materially misleading.

# 2. MY NAME, MY DAUGHTER, AND SAM, MY SERVICE DOG

I demand that individuals stop using my name, my daughter's name, **Sam, my service dog**, my apartment number, or my ordinary daily activities as a means of creating, supporting, or circulating false narratives about me.

My ordinary walks with Sam and my outdoor activities are documented and, where applicable, publicly posted so that there is a contemporaneous record of my whereabouts and activities.

The fact that I walk with my service dog, record my surroundings, engage in artistic activity, meet with colleagues, document conditions, or travel through common areas does not constitute evidence of wrongdoing.

Any person with a legitimate concern may report it truthfully through an appropriate channel. However, I will preserve and use available records, video, audio, photographs, communications,

witness information, police records, security records, and other evidence to challenge knowingly false allegations.

No tenant, guest, business operator, tenant representative, security employee, or other person should use Sam's presence or my lawful activities with my service dog as a basis for harassment, intimidation, retaliation, or false reporting.

# 3. FALSE REPORTS, DEFAMATION, AND CIVIL CLAIMS

I am placing all involved persons on notice that continued publication or communication of materially false statements concerning me may result in additional civil claims, including claims arising from defamatory statements where the applicable legal elements are established.

I reserve the right to pursue a defamation action and any other available civil remedies if false statements continue and the evidence establishes the required legal elements.

This notice does not state that every inaccurate statement constitutes defamation or that every police report constitutes a crime. Rather, I am specifically concerned with knowingly false statements, materially false allegations, fabricated information, and communications made for an improper purpose where the applicable legal requirements are satisfied.

I will preserve evidence rather than engage in continued personal disputes with tenants.

# 4. TENANT-TO-TENANT HARASSMENT IS PART OF MY CLAIMS

The conduct described in this notice is not being presented merely as a disagreement between neighbors.

The incidents involving threats, confrontations, alleged false reports, police or emergency calls, communications about me, interference with my property or artwork, and other conduct occurring after my reporting of property, safety, security, and other concerns are being documented as **claims, evidence, and part of my chronology.**

To the extent any person has communicated my name, my daughter's name, Sam's presence, my apartment number, my artistic activities, or allegations concerning me to other tenants, management, police, security, governmental agencies, or third parties, I request that those communications be preserved.

# 5. IDENTIFIED TENANTS, GUESTS, AND BUSINESS OPERATORS

For purposes of identifying persons and locations potentially relevant to my chronology and claims, I am placing the following categories of persons on notice:

- Tenants and/or guests associated with **Apartment 505**;
- Tenants and/or guests associated with **Apartment 507**;
- The individual identified to me as **Ken Cornell**, associated with **"Hair by Ken" and/or Apartment 509**, subject to verification through appropriate records;
- Other persons associated with Apartment 509 or that business, to the extent identified through records;
- Any tenants, guests, business operators, tenant representatives, management representatives, security personnel, or other persons subsequently identified through evidence.

This identification is **not a declaration that any particular person has committed a crime or that liability has been established.**

It is intended to ensure that relevant communications, surveillance, access records, police reports, security records, management records, and other evidence concerning these individuals and identified incidents are preserved.

I expressly reserve the right to identify additional persons as evidence becomes available.

# 6. FEDERAL, STATE, AND LOCAL NOTIFICATION

For clarity, I am **not claiming that every tenant dispute or every incident described in this notice is itself a federal investigation.**

The tenant-related harassment, threats, false calls, false reports, interference, property issues, retaliation, and related conduct are being preserved as **claims, evidence, and part of my chronology.**

Separately, I have notified appropriate governmental authorities concerning related matters. **I have notified local law enforcement, DHS, and the FBI**, and I have provided or am prepared to provide relevant documentation and evidence through appropriate channels.

Accordingly, the individuals and entities identified in this notice are on notice that relevant information concerning their communications or conduct may be provided to appropriate **federal, New York State, and local authorities for review, investigation, oversight, or consideration as those authorities determine appropriate.**

This may include evidence concerning:

- Communications concerning my name;

- Communications concerning my daughter;
- Communications concerning Sam, my service dog;
- Police or emergency calls concerning me;
- Alleged false or misleading reports;
- Threats or confrontations;
- Communications with management or security;
- Communications concerning my apartment;
- Communications concerning my artwork or artistic activities;
- Damage, removal, or relocation of artwork;
- Access-control issues;
- Security incidents;
- BSI Security reports and responses;
- Surveillance footage;
- Tenant complaints;
- Business or commercial activity;
- Alleged selective enforcement;
- Retaliatory conduct following reporting or legal activity; and
- Other evidence relevant to my claims or governmental inquiries.

I will not characterize any individual as having been formally investigated, charged, or found liable unless the applicable authority has actually made such a determination.

# 7. LOCAL REPORTING AND "SEE SOMETHING, SAY SOMETHING"

I am not attempting to improperly federalize ordinary tenant disputes.

Where information has subsequently been requested by federal, state, or governmental authorities, I have provided or am providing information through the appropriate channels.

The fact that a matter has been reported to a federal agency does not prevent local authorities, management, security, or other appropriate entities from addressing matters within their respective authority.

I have consistently attempted to address residential safety, physical security, property integrity, and related habitability concerns through proper administrative and local regulatory channels. Since the inception of my tenancy, numerous statements, admissions, and documented state code and lease violations have been placed directly on record, which I have formally compiled and transmitted to relevant government oversight authorities.

This property operates as a HUD-subsidized development governed under nonprofit housing compliance frameworks. Any incidents, conditions, or practices that run counter to federal, state, or municipal statutes cannot be handled informally—they must be reported to the appropriate oversight bodies. If all parties are to conduct themselves in compliance with the law, adherence to mandatory regulatory standards is non-negotiable. Parties seeking clarification regarding compliance obligations are directed to property management, the Internal Revenue Service (IRS.gov), the New York State Department of Taxation and Finance, and the Office of the New York State Attorney General (Charities and Civil Rights Bureaus).

My position has been unwavering: residents have a fundamental right and civic duty to report safety hazards and unlawful conduct ("see something, say something"), and local law enforcement, regulatory inspectors, and public authorities must be fully supported in investigating and resolving conditions that threaten residential health, safety, and property rights.

## GOVERNING LEGAL PROVISIONS AND STATUTORY AUTHORITY

- **HUD Management, Safety & Physical Condition Standards (24 C.F.R. Part 5, Subpart G & 24 C.F.R. § 5.703):** Mandates that all federally assisted and HUD-subsidized multi-family housing properties must be maintained in a decent, safe, and sanitary condition, free from hazardous materials, structural interference, unauthorized commercial hazards, and unaddressed residential nuisances.

- **Statutory Warranty of Habitability (New York Real Property Law § 235-b):** Imposes a non-waivable legal duty on landlords and residential operators to ensure premises and common areas are fit for human habitation and free from conditions dangerous to the life, health, or safety of residents.

- **Nonprofit Governance, Integrity & False Filings (New York Not-for-Profit Corporation Law §§ 112, 715 & NY Executive Law § 172 et seq. / Article 7-A):** Requires nonprofit corporate entities and their fiscal operators to conduct operations strictly within their stated corporate purposes, maintain fiduciary integrity, and comply with state oversight enforced by the New York State Attorney General's Charities Bureau.

- **Tax-Exempt Organizational Compliance (26 U.S.C. § 501(c)(3) & Treasury Regulations):** Dictates that tax-exempt, federally supported entities must operate exclusively for exempt charitable and public housing purposes, prohibiting private benefit, unauthorized commercial activity, or failure to report significant operational noncompliance to regulatory authorities.
- **Right to Report Violations Free from Retaliation (New York Real Property Law § 223-b):** Protects tenants from retaliation, harassment, threats, or constructive eviction for making good-faith complaints to governmental agencies, health departments, code enforcement, or law enforcement regarding violations of housing, health, or safety laws.

# 8. ARTIST WORKSPACE AND ARTISTIC EXPRESSION

1219 Main Street is understood and represented as an artist-oriented/live-work environment. Accordingly, management and tenants should distinguish between legitimate enforcement of applicable lease, safety, zoning, noise, or building requirements and improper interference with lawful artistic activity.

I am an artist and use my space for lawful artistic and creative work.

I object to any attempt to impose restrictions on my artistic activity that are not contained in my lease, applicable written rules, building policies, or lawful municipal requirements.

I also object to the removal, destruction, slashing, relocation, disposal, or interference with artwork without lawful authority.

Any limitation placed upon artistic work should have an identifiable and legitimate basis.

I therefore request that management provide the **specific written rule, lease provision, building policy, zoning requirement, or ordinance** relied upon whenever management claims that a particular artistic activity is prohibited.

I further object to selective enforcement against artists or any particular tenant while substantially similar activities are permitted for other tenants.

# 9. FIRST AMENDMENT AND ARTISTIC EXPRESSION

I reserve all constitutional and civil-rights claims that may be applicable.

I recognize that the First Amendment generally restricts governmental action and does not automatically impose constitutional obligations on a private landlord or private tenant association. Nevertheless, where governmental actors, governmental processes, or other legally

protected rights are implicated, restrictions involving speech, expression, petitioning, association, or artistic expression may raise constitutional and statutory issues.

Nothing in this notice constitutes a waiver of those rights.

At minimum, management should ensure that enforcement of building and tenant rules is **neutral, consistently applied, documented, and based upon actual written requirements rather than personal opinions concerning who is or is not an artist or what an artist should be permitted to create.**

## 10. TENANT ASSOCIATION AUTHORITY

Any tenant association, tenant committee, gallery committee, or other tenant-created organization is requested to identify its legal or contractual authority before attempting to impose requirements upon another tenant.

Please provide:

1. The organization's legal name;ein/state tax id
2. Its governing documents and contracts
3. Any bylaws or written rules; state /federal and from Belmont and ArtSpace authorizing such
4. The source of its authority over individual tenants;
5. Any provision of my lease granting it authority; for artist tenancy
6. Any management authorization establishing its authority;
7. The specific rule allegedly governing my artistic activities; and
8. The procedure for challenging or appealing any such determination.

Unless such authority is established, I do not consent to a tenant association or individual tenant acting as though it possesses management, landlord, governmental, or regulatory authority over my tenancy. **All parties are under review by federal and state oversight.**

## 11. LEASE COMPLIANCE MUST BE CONSISTENT

My lease contains provisions concerning, among other things, violent threats and conduct, business/commercial activity, and alterations or changes to an apartment.

I therefore request that management apply those provisions consistently to **all tenants**, rather than selectively enforcing restrictions against one tenant while permitting substantially similar conduct by others.

If management determines that operating a business from a residential unit, materially altering an apartment, or engaging in threatening conduct violates the lease, I request that the same standard be applied consistently to similarly situated tenants.

Conversely, if management has approved a particular activity, business, alteration, studio use, gallery use, or commercial activity, I request that management identify the written basis for that approval.

## 12. CIVIL CONSPIRACY, COLLUSION, AND COORDINATED CONDUCT

I further place all involved persons on notice that I am documenting communications and conduct that may appear coordinated, including communications among tenants, management, security personnel, and other persons concerning me.

I am not declaring that a civil conspiracy or collusion has already been legally established.

Rather, I am preserving the issue for investigation and litigation where the evidence may establish coordinated conduct undertaken for an unlawful purpose or through unlawful means.

Accordingly, I demand that no person coordinate false information, knowingly misleading allegations, retaliatory complaints, or other communications for the purpose of creating an adverse record against me or interfering with my tenancy, work, safety, reputation, or lawful activities.

## 13. SECURITY, POLICE, AND MANAGEMENT RECORDS

I request preservation of all records concerning communications about me, my daughter, **Sam, my service dog**, Unit 508, my artwork, my artistic activities, and the incidents I have reported since 2025.

This includes, to the extent reasonably available:

- Police reports and calls for service;
- 911 and emergency communications;
- Security incident reports;
- BSI Security records;
- Security dispatch/radio records;
- Management communications;

- Tenant complaints;
- Emails and text messages;
- Written complaints;
- Visitor/access records;
- Access-control records;
- Relevant surveillance footage;
- Photographs;
- Maintenance records;
- Artwork-related communications;
- Communications concerning Sam;
- Communications concerning my daughter;
- Communications concerning alleged threats or crisis calls;
- Communications concerning my federal, state, or local complaints; and
- Communications concerning whether I am permitted to engage in artistic or recording activity in Unit 508.

# 14. SURVEILLANCE PRESERVATION

I specifically request preservation of reasonably available surveillance relating to incidents previously reported, including incidents involving:

- Threats or confrontations;
- Parking-lot encounters;
- Individuals approaching me or my apartment;
- Individuals allegedly attempting to gain access to residential floors;
- Artwork being removed, damaged, moved, or discarded;
- Mail or package incidents;
- Unsecured doors;

- Security responses;
- BSI Security responses;
- Hallway activity;
- Persons sleeping or loitering in common areas;
- Reported violence;
- Alleged false crisis calls;
- Persons entering or leaving the property in connection with identified incidents; and
- Any other incident for which I have previously requested preservation.

This preservation request includes footage that may identify persons involved in the incidents, their vehicles, points of entry and exit, movements through common areas, and responses by management or security.

# 15. PRESERVATION OF EVIDENCE

Because these matters may involve ongoing claims and governmental or federal review, all potentially relevant records should be preserved in their original form.

This includes electronic communications, emails, text messages, surveillance recordings, photographs, access logs, incident reports, tenant complaints, security records, management records, and other electronically stored information.

Any routine deletion or destruction policy should be suspended with respect to records reasonably related to these identified matters.

No person should alter, destroy, conceal, discard, overwrite, or otherwise interfere with potentially relevant evidence.

# 16. MANAGEMENT GUIDANCE AND PROPER CHANNELS

I recommend that all tenants speak directly with management if they are uncertain about:

- Whether an activity is permitted;
- Whether an artist may work during particular hours;
- Whether artwork may be displayed;

- Whether recording is permitted;
- What constitutes unreasonable noise;
- Whether a tenant may operate a business;
- Whether alterations to an apartment are permitted;
- What authority a tenant association possesses; or
- How complaints are supposed to be submitted.

Tenants should not take enforcement into their own hands.

Legitimate complaints should be directed to management, security, police, emergency services, or another appropriate authority rather than addressed through personal confrontation, intimidation, retaliation, or harassment.

# 17. FINAL CEASE-AND-DESIST DEMAND

I therefore demand that all persons involved, including tenants, guests, business operators, tenant representatives, security personnel, and other persons associated with 1219 Main Street:

1. **Cease and desist from harassment, threats, intimidation, retaliation, and unwanted confrontations;**
2. **Cease knowingly false reports and knowingly false or baseless allegations concerning me, my daughter, or Sam, my service dog;**
3. **Cease using my name, my daughter's name, Sam's presence, or my apartment as a basis for harassment or intimidation;**
4. **Cease interference with my lawful artistic and creative work;**
5. **Cease removal, destruction, relocation, disposal, or interference with my artwork without lawful authority;**
6. **Cease any unauthorized attempt by tenants or tenant organizations to exercise management, landlord, governmental, or regulatory authority over my tenancy;**
7. **Apply lease and building rules consistently and without selective enforcement;**
8. **Preserve all relevant evidence;**
9. **Direct legitimate complaints through management, security, police, or other appropriate channels rather than personal confrontation;**
10. **Identify the written basis for any restriction placed upon my artistic activities;**

11. **Refrain from retaliation because I have reported safety, housing, security, property, or other concerns, exercised lawful rights, participated in legal proceedings, communicated with governmental agencies, or provided information requested by authorities; and**

12. **Refrain from interfering with Sam, my service dog, or using Sam's presence as a pretext for harassment, intimidation, retaliation, or false reporting.**

# 18. WRITTEN RESPONSE REQUESTED

I request a written response from management addressing the following:

1. The rules governing artistic and recording activity at 1219 Main Street;
2. The permitted hours for artistic and recording work;
3. The rules governing artwork displayed inside or outside a unit;
4. The rules governing commercial/business activity by tenants;
5. The rules governing alterations to apartments;
6. The authority, if any, of the tenant association or gallery committee over individual tenants;
7. The applicable procedures for reporting tenant complaints;
8. The applicable procedures for addressing threats or harassment;
9. The basis for any restriction previously imposed upon my artistic work;
10. The basis for any selective enforcement concerns I have raised; and
11. Confirmation that relevant records and surveillance have been preserved.

# 19. RESERVATION OF RIGHTS AND FURTHER REVIEW

I expressly reserve the right to supplement my claims and identify additional parties based upon evidence obtained through police reports, security records, surveillance, management records, communications, witness statements, governmental records, discovery, FOIL requests, subpoenas, or other lawful means.

Nothing in this notice constitutes a waiver of any federal, state, local, contractual, constitutional, statutory, tort, civil-rights, housing, or other claim or remedy.

I expressly reserve the right to pursue available remedies concerning harassment, threats, retaliation, interference with my tenancy, interference with artistic work, property damage, defamatory statements where legally actionable, selective enforcement, contractual violations, or other unlawful conduct established by the evidence.

**This notice places all identified persons and entities on actual notice that I am preserving evidence and that continued harassment, threats, false reporting, retaliation, interference with my artistic work, interference with my tenancy, interference involving Sam, my service dog, or other unlawful conduct may result in additional claims and referral of relevant evidence to appropriate authorities.**

I expect all parties to conduct themselves accordingly and to communicate through appropriate lawful channels.

**Sam is my service dog. Any interference with Sam, harassment involving Sam, or attempt to use Sam's presence as a pretext for false reporting, intimidation, retaliation, or interference with my lawful activities will be documented and addressed through the appropriate channels.**

This notice is intended to establish a formal record and is **not an invitation to engage in further personal confrontation.**

Sincerely,

**TAMMY BECKMAN**
1219 Main Street, Unit 508
Buffalo, New York

**DATE:** September 7, 2026

**TO:**

All Residents, Commercial Operators, Subtenants, Guests, and Invitees of

**1219 Main Street, Buffalo, NY 14209**

*(Including, but not limited to, Occupants of Units 505, 507, 509, and Associated Associates)*

**AND TO (OWNERSHIP, EXECUTIVE LEADERSHIP, MANAGING AGENTS & SECURITY):**

Brad Packard, Chief Executive Officer

Brenda Decker, Property Operations / Management

Jackee Lewis, Property Management

Brad (On-Site Property Management / Successor to Nichelle)

Neal, Maintenance Staff

Belmont Housing Resources for WNY

BSI Security, Inc.

1219 Main Street

Buffalo, NY 14209

**FROM:**

Tammy Beckman

1219 Main Street, Unit 508

Buffalo, NY 14209

## RE: BLANKET NOTICE OF UNLAWFUL RETALIATION, RESIDENTIAL NUISANCE, WEAPONIZATION OF EMERGENCY SERVICES, CONTINUOUS MANAGEMENT NOTICE SINCE 2025, AND SYSTEMIC BREACH OF LEASE COVENANTS

This document serves as an official, blanket legal supplement to prior formal notices, establishing an exhaustive, contemporaneous administrative record binding upon all tenants, commercial operators, on-site personnel, managing agencies, and executive leadership at 1219 Main Street.

Notice is hereby given of ongoing unlawful retaliation, weaponization of law enforcement, selective lease enforcement, and systemic failure by management and security to maintain a secure and lawful residential environment.

## 1. REASONABLE COMPLIANCE & SAFETY INQUIRIES MET WITH SYSTEMIC HOSTILITY

- **Lawful and Protected Resident Oversight:** Legitimate inquiries regarding building habitability, environmental hazards, commercial licensing, fire code adherence, chemical storage, ventilation safeguards, and unmonitored transient foot traffic are protected under New York Real Property Law § 223-b.
- **Absence of Provocation:** Despite my complete avoidance of personal interactions and absence of provocation, standard requests for lease adherence and communal safety have been consistently met with direct personal hostility, verbal abuse, screaming in hallways, and retaliatory wall-banging across shared partitions.
- **Criminal Misuse of Law Enforcement & False Dispatches:** Multiple occupants and associates continue to use threats of emergency police dispatch as an instrument of intimidation. Falsely summoning law enforcement or fabricating crisis/welfare complaints against a tenant in retaliation for reporting housing, code, or lease violations is a criminal offense under **New York Penal Law § 240.50 (Falsely Reporting an Incident**) and subjects offending parties to direct civil liability for malicious prosecution and intentional infliction of emotional distress.

## 2. EXHAUSTIVE AND CONTINUOUS MANAGEMENT NOTICE SINCE 2025

- **Multi-Year Administrative Trail:** Building ownership, Belmont Housing, and on-site management have had actual and constructive knowledge of these severe conditions continuously since at least 2025.
- **Specific Notice to Administrative Leadership:** Formal grievances, incident summaries, and direct complaints documenting unpermitted commercial operations, chemical discharges, violent hallway altercations, weapons incidents, open drug consumption, compromised access doors, and targeted tenant harassment have been repeatedly presented to:
    - **Brad Packard, Chief Executive Officer**
    - **Brenda Decker, Property Operations / Leadership**

- **Jackee Lewis, Property Management**
- **Nichelle (Former Property Manager, Resigned)**
- **Brad (Current Property Manager / Replacement)**
- **Neal (Maintenance Staff)**
- **BSI Security, Inc. (Contracted Security Personnel)**

- **Constructive Failure to Act:** Despite continuous administrative changes, executive turnover, and documented police interventions (including Buffalo Police Department Incident #26-1110571), leadership and management have failed to take corrective measures, curb ongoing tenant intimidation, or secure common residential areas.

## 3. SELECTIVE LEASE ENFORCEMENT & SYSTEMIC HABITABILITY VIOLATIONS

- **Express Prohibition of Commercial Activities:** The standard residential leases governing 1219 Main Street strictly bar occupants from operating commercial, retail, client-facing, or service businesses out of residential apartments.
- **Discriminatory Non-Enforcement:** Management has knowingly tolerated unauthorized, unventilated commercial enterprises (including commercial salon services and unpermitted food operations) that generate hazardous chemical fumes, compromised water pressure, and unvetted client foot traffic through residential floors, while simultaneously permitting violent and disruptive tenants to violate core lease covenants without consequence.
- **Breach of the Statutory Warranty of Habitability:** The unchecked emission of chemical and smoke fumes, deliberate physical noise disruptions during working and recording hours, compromised security envelopes, and common-area violence constitute an ongoing, actionable breach of the **Statutory Warranty of Habitability (NY Real Property Law § 235-b)** and the covenant of quiet enjoyment.

## 4. BLANKET DEMAND FOR IMMEDIATE COMPLIANCE AND REMEDIATION

1. **Immediate Cease-and-Desist by All Occupants:** All tenants, subtenants, and visitors must immediately cease and desist all wall-banging, verbal abuse, corridor confrontations, false police threats, door-loitering, and interference with Unit 508 and my household.
2. **Immediate Enforcement by Management and Executive Officers:** Executive leadership (including Brad Packard), Belmont Housing, and on-site management must immediately enforce all residential lease restrictions, shut down unpermitted commercial

and food-service activities operating in residential units, secure compromised physical building doors, and abate all environmental and chemical hazards.

3. **Formal Preservation of Evidence:** All parties are formally directed to preserve all physical, electronic, and surveillance evidence, including building camera recordings, access logs, maintenance requests, incident complaints, and communications.

4. **Regulatory and Judicial Referrals:** This blanket supplement is officially incorporated into ongoing proceedings before the **Buffalo Police Department (Incident #26-1110571)**, the **New York State Office of the Attorney General (Civil Rights and Environmental Bureaus)**, the **U.S. Department of Housing and Urban Development Office of Inspector General (HUD-OIG)**, and active state and federal civil litigation.

All statutory remedies, common-law claims for private nuisance and tortious interference, and legal rights under New York and federal law are strictly reserved.

**Tammy Beckman**

*(Signature)* ________________________________________

*(Printed Name)* Tammy Beckman

*(Date)* September 7, 2026

**ACKNOWLEDGMENT OF SERVICE / RECEIPT (ON-SITE MANAGEMENT / LEADERSHIP):**

Received By (Print Name): ___________________________________

Title / Organization: ________________________________________

Signature: _________________________________________________

Date / Time Stamp: __________________________________________

Exhibit 9C

STATE OF NEW YORK
GRIEVANCE COMMITTEE FOR THE
SECOND, ELEVENTH AND
THIRTEENTH JUDICIAL DISTRICTS

RENAISSANCE PLAZA
335 ADAMS STREET – SUITE 2400
BROOKLYN, NEW YORK 11201-3745
(718) 923-6300

ANGÉLICQUE M. MORENO
**CHAIR**

DAVID W. CHANDLER
**CHIEF COUNSEL**

SUSAN KORENBERG
**DEPUTY CHIEF COUNSEL**

SUSAN B. MASTER
SARA MUSTAFA
LAUREN R. COOPER
CONOR HARTNETT
MICHAEL D'AMBROSIO
**STAFF COUNSEL**

August 19, 2025

**PERSONAL AND CONFIDENTIAL**
Tammy Beckman
1219 Main Street, Apt. 508
Buffalo, New York 14209

**Re: File No.: K-1042-25**

Dear Ms. Beckman:

This will acknowledge receipt from the New Jersey Office of Attorney Ethics of your undated complaint form and enclosures, regarding an attorney who was admitted to the practice of law in New York State through the Second Judicial District.

Please be advised that the function of this Committee is to investigate and prosecute acts of professional misconduct committed by attorneys. When a complaint is received, we review it to determine if it involves behavior which could constitute professional misconduct by the attorney. An attorney may be found guilty of professional misconduct if it can be proven that an ethical rule or law was violated. If there is a sufficient basis to conduct an investigation, the Committee will do so. Otherwise, no action will be taken. After reviewing your letter, it has been determined that it does not state a complaint of professional misconduct against the subject attorney.

If it is your feeling that your legal rights need protection, we recommend that you consult with an attorney of your own choosing. The Committee is not permitted to give you legal advice or act as your attorney.

Although we appreciate your efforts, we are unable to assist you.

Very truly yours,

David W. Chandler
Chief Counsel

DWC/jc

State of New York
Office of the Attorney General

Letitia James
Attorney General

Division of Social Justice
Charities Bureau

June 5, 2026

Tammy Beckman
getthebuzz716@gmail.com

Re: **Belmont Housing Resources for WNY, Inc., Artspace Projects Inc., Community Action Organization of Western NY. & Suicide Prevention & Crisis Services.**
NYS Regis. No's.: **02-40-70, 21-00-32, 02-01-88 & 04-97-55**
Our File Numbers: **26-042183, 26-043017, 26-043028 & 26-043039**

Dear Tammy Beckman:

I am writing in response to your correspondence to the Attorney General's Charities Bureau concerning Belmont Housing Resources for Western New York, Artspace Projects Inc., Community Action Organization of Western New York & Suicide Prevention and Crisis Services.

The Charities Bureau seeks to protect the public's interest in charities and the services charities provide. When individuals engage in behavior that jeopardizes the assets of charities or their programs or defrauds the public, the Charities Bureau may investigate or take enforcement action. The Charities Bureau receives hundreds of complaints each year and, due to the high volume of complaints, the limits of our resources, and the constraints of our jurisdiction, the Bureau cannot act on or otherwise investigate every complaint.

We will review your correspondence closely to evaluate whether sufficient basis exists for action by the Attorney General.

Please be advised that this Office is not authorized to provide legal opinions to or represent individuals. If you believe that you may have an individual claim, you may wish to consult a private attorney. Your local bar association should be able to provide you with a referral to an attorney. ***Please note*: *The complaint you have filed with this Office has no effect on any statute of limitations filing deadlines that might apply to your claim.*** By filing a complaint with this Office, you have not initiated a lawsuit or a proceeding, nor has this Office initiated a lawsuit or a proceeding on your behalf.

Sincerely,

*Steven Davis*

Steven Davis
Legal Assistant
Charities Bureau

# Timeline

## August 2024 emails from Artspace Project Inc

Info given and what's stated is accurate or safe, artist preference is given to tenant who are artist under the guides that

## Beckwith - Artspace Buffalo Lofts Interview for Artist Preference

Inbox

n

Naomi Chu <naomi.chu@artspace.org>

Wed, Aug 28, 2024, 2:00 PM

to me, Nichelle

Hi Tammy - I am glad we connected via phone. Below is the invitation for an Artist Preference.

Invitation to Artspace Buffalo Lofts Artist Interview Committee
Applicant Name: Tammy Beckwith

Interview Date: Friday, August 30th
Interview Time: 11:00am Eastern
Interview Location: Virtual via Zoom (see invite below this message) - If you have issues connecting please call my/Naomi's cell at 612-282-1915

Greetings Tammy!

The Artspace Buffalo Lofts Artist Interview Committee (AIC) is looking forward to meeting you. The AIC is comprised of three to five artists, community members, and/or Artspace representatives. Your interview will run about 30 minutes. We have included two documents that you may find helpful. The first is an Artspace Artist Preference FAQ and the second is about our Artspace Artist Interview Process.

Please come prepared to spend the first 5-10 minutes to describe your art form and present your portfolio, resume and/or examples of your work. <u>Please know that the AIC will not be judging the quality of your work, but rather the energy and commitment shown by the effort that you put into your work.</u>

The AIC wants to know about your art form/cultural work: how you learned your craft, how long you have been practicing it, and how your work has developed over time. Feel free to display it or perform it or show it online. It's completely up to you to share in the way that works for you. Please let us know if you have any special needs or accommodations.

We hope you enjoy sharing your art form with us.

See you soon,
*The Artspace Buffalo Lofts AIC*

**PROCEDURAL UPDATE: Please note that an invitation to interview with the Artist Interview Committee (AIC) does not guarantee that your household is determined housing-eligible. Determination of qualification and eligibility for housing and the artist preference will be processed simultaneously.**

Naomi Chu <naomi.chu@artspace.org>

Wed, Aug 28, 2024, 1:52 PM

to Doran, Jennifer, me

This event isn't in your calendar yet You haven't interacted with naomi.chu@artspace.org before. Do you want to automatically add this and future invitations from them to your calendar?

Add to calendarReport spam

| | |
|---|---|
| 3<br>0 | Buffalo AIC: Tammy Beckwith<br>From Google Calendar<br>This invitation is out of date. This event has been updated.<br>View updated information on Google Calendar |

Join via Zoom invite below.

Attendees
Naomi Chu
Doran Harper
Jennifer Marmol
Tammy Beckwith

Naomi Chu is inviting you to a scheduled Zoom meeting.

Topic: Buffalo AIC: Tammy Beckwith
Time: Aug 30, 2024 10:00 AM Central Time (US and Canada)

Join Zoom Meeting
https://us02web.zoom.us/j/83582024829?pwd=N78z8fmJOO5fF1CbU73bRS96CalbgK.1

Meeting ID: 835 8202 4829
Passcode: 598916

---

One tap mobile
+13126266799,,83582024829# US (Chicago)
+16469313860,,83582024829# US

In 2024 I attended first tenant association meeting on location , they discussed painting the gallery as no art was on display and shows and events /art according to tenant whom lived there for year, since 2018 art portion of things have went unaddressed, gallery next door is closed and now a school, see google on how it show

March 2025 whistleblower info share and meeting request sent to all audio on file for federal claim added to doj/congressional/hud-nsid timeline submission as requested

May 2025 Meeting with Jackee, Brenda , Nichelle 1219 main st to which they stated jackee esp that Artspace projects inc meeting call had transpired and that there is no formal artists/tenant/artspace

project inc oversight and that ongoing all artists are to just let them know when artist host gallery showings

Email prior to meeting from city of buffalo at said meeting counsel Killian stated she spoke to Artspace project inc and represent them along with Belmont, when sent letter and calls for letter of representation and to organize meeting with artspace project inc and board along with Belmont , I also mailed and emailed same letters to Artspace Project Minnesota, later on claim as if was transferred to small claim court Counsel cain then fills in for Killian now state she was representing them, to which I also sent meeting request. s

n Fri, Oct 3, 2025 at 12:47 PM Fulater, Trek M <TFulater@buffalony.gov> wrote:

Dear All,

Please be advised that I was informed by opposing counsel that she is unable to attend today's conciliation meeting due to illness. That meeting is scheduled at 2pm.

As such, and because we cannot speak to a represented party without their attorney, I have agreed to adjourn the meeting so that Artspace can appear with their attorney.

After speaking with counsel, I believe that we can adjourn this mater to Tuesday at 2pm. Please let me know if that works for everyone. Thank you.

*******************************************

Trek Fulater, Assistant Corporation Counsel
City of Buffalo Department of Law
65 Niagara Square, Room 1109
Buffalo, New York 14202
Tel.: (716) 851-4082
Fax: (716) 851-4105

**Confidentiality Notice**: This electronic mail transmission is intended for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the

sender immediately by e-mail and delete the original message. Thank you for your cooperation

27-CO-26-3498 Filed in District Court State of Minnesota 7/14/2026 3:33 PM

State of Minnesota
Hennepin County

Conciliation Court
Fourth Judicial District

Case Number: 27-CO-26-3498
Case Type: Conciliation

Tammy Beckman vs Artspace Affordable Family Housing I, L.P., Artspace Projects, Inc., Artspace Affordable Housing, LP

**Order for Dismissal on Claim and/or Counterclaim**

Appearances: ☒ Plaintiff 1 Tammy Beckman — ☒ Defendant 1 Joel Muskoplat, atty Doran Harper, director of asset management Jackee L. Lewis, Carlos Pratts, witnesses — ☒ Contested ☐ Default

Appearances: ☐ Plaintiff 2 — ☒ Defendant 2 Joel Muskoplat, atty Doran Harper, director of asset management Jackee L. Lewis, Carlos Pratts, witnesses — ☒ Contested ☐ Default

Appearances: ☐ Plaintiff 3 — ☒ Defendant 3 Joel Muskoplat, atty Doran Harper, director of asset management Jackee L. Lewis, Carlos Pratts, witnesses — ☒ Contested ☐ Default

Upon evidence received, IT IS ORDERED:

**CLAIM:** ☐ Plaintiff has not demonstrated an entitlement to relief and recovers zero.

**CLAIM:** ☐ Plaintiff #______ is entitled to judgment against defendant #________ for $________________ plus fees of $________, plus service fees of $____________, for a JUDGMENT OF $_______________.

**COUNTERCLAIM:** ☐ Defendant#______ is entitled to judgment against plaintiff #______ for $_______________ plus fees of $_______, plus service fees of $____________, for a JUDGMENT OF $________________.

**OFFSET:** $_________________________ awarded to Plaintiff / Defendant

☐ **REPLEVIN:** _________________________ shall immediately return _________________________ to the ____________________ and that the Sheriff of the county in which the property is located is authorized and directed to effect repossession of such property according to Minn. Stat. § 491A.01, subd. 5, and turn the property over to ______________________________.

☐ __________________'s claim is dismissed without prejudice as to ____________________.
☒ Plaintiff 1's claim is dismissed with prejudice as to Defendants 1-3

☐ An Affidavit of Inability to Pay and/or an In Forma Pauperis Order is/are on file in this case. Upon satisfaction of the judgment ordered herein, _________________________ shall pay $__________________ out of the money recovered to Conciliation Court as reimbursement for fees and costs waived.

☐ OTHER ________________________________________________________________

Dated: 14 July 26. Referee: K. Chapman [signature]

**JUDGMENT** is declared and entered as stated in the Court's Order for Judgment set forth above, and the Judgment shall become finally effective on the date specified in the notice of judgment set forth below.

**NOTICE:** THE PARTIES ARE NOTIFIED that Judgment has been entered as indicated above, but the Judgment is stayed by law until AUG 07 2026. (to allow time for an appeal/removal if desired).
THE PARTIES ARE FURTHER NOTIFIED that if the case is removed to District Court and the removing party does not prevail as provided in Rule 524 of the Minnesota General Rules of Practice for the District Courts, the opposing party will be awarded $50 as costs.

Dated: 7/14/2026 Court Administrator/Deputy: [signature]

Department of the Treasury - Internal Revenue Service

# Form 211, Application for Award for Original Informatio

Thank you
Your Form 211 is submitted

The IRS will acknowledge your submission with a letter, generally within 30-60 days.

If you have documents you weren't able to upload, please mail them:
Internal Revenue Service
Whistleblower Office - ICE
1973 N. Rulon White Blvd. M/S 4110
Ogden, UT 84404

Please don't submit a duplicate Form 211 online or by fax or mail. This can delay claim processing.

Helpful Resources:
Whistleblower Claim Process, Publication 5251
Whistleblower Office

The Office of
**Minnesota Attorney General Keith Ellison**
helping people afford their lives and live with dignity, safety, and respect • *www.ag.state.mn.us*

March 12, 2026

**VIA E-MAIL ONLY**

Tammy Beckman
1219 Main Street, Apt 508
Buffalo, NY 14209
*beckmantammylynn@gmail.com*

Dear Ms. Beckman:

Thank you for your correspondence received on March 9, 2026.

You report concerns regarding Artspace Projects, Inc. ("Artspace"). Specifically, you report concerns that Artspace is not operating in compliance with its obligations as a tax-exempt organization under section 501(c)(3) of the Internal Revenue Code. You also state that Artspace may be misusing the tax credits and state and federal housing subsidies that it receives as a nonprofit organization. In addition, you question whether Artspace's Board of Directors is adhering to its fiduciary duties.

I appreciate your contacting our office. We take Minnesota's laws that apply to charitable and nonprofit corporations very seriously. While I cannot give you legal advice, I can tell you the following, which I hope will be helpful:

First, business entities including nonprofits are formed by, and their registered agents are on file with, the Minnesota Secretary of State. As such, you may also wish to direct your concerns to the Minnesota Secretary of State, as follows:

Office of the Minnesota Secretary of State
332 Minnesota Street, Suite N201
St. Paul, MN 55101
(651) 296-2803
Email: business.services@state.mn.us

Second, Artspace is registered as a tax-exempt organization under section 501(c)(3) of the Internal Revenue Code. Thus, you may also wish to contact the Internal Revenue Service ("IRS"), the agency with the authority to investigate such concerns. Our Office does not regulate the tax-exempt status of a nonprofit. You may contact the IRS as follows:

Internal Revenue Service
Attention: TEGE Referrals Group
1100 Commerce Street
MC 4910 DAL
Dallas, TX 75242
1-877-829-5500
https://www.irs.gov/charities-non-profits/irs-complaint-process-tax-exempt-organizations

Third, registration requirements for soliciting charities are found in the Minnesota Charitable Solicitation Act, Minn. Stat. §§ 309.50–.61. The Act requires registration with the AGO by any charitable organization that solicits or plans to solicit contributions in excess of $25,000, has paid staff, or uses a professional fund-raiser, unless the organization is exempt. *See* Minn. Stat. §§ 309.515, 309.52. You may search for Artspace on our website, as it is property registered with the AGO, at https://www.ag.state.mn.us/Charity/Search/. There, you will find general and financial information about Artspace that may be useful to you. I am also attaching a publication called *Guide to Minnesota's Charities Laws* that explains more about registration requirements.

Finally, I can understand how your reported concerns regarding Artspace would be troubling. The Charities Division of the Office of the Minnesota Attorney General will further evaluate the issues you raised to determine what, if any, additional action may be appropriate based on the circumstances you describe. Although we may contact you if we have additional questions, please know that we will not be able to inform you as to any investigation we may or may not undertake because any such information is not public under the Minnesota Data Practices Act, Minnesota Statutes chapter 13. *See* Minn. Stat. §§ 13.39, 13.65.

Thank you again for your correspondence.

Sincerely,

ASHLEY LEEN
Assistant Attorney General

Enclosure(s): *Guide to Minnesota's Charities Laws*

# Request 26-255

Open

## Your record request #26-255 has been submitted successfully.

The AGO has received your request. Thank you.

View Request 26-255

https://mnago.nextrequest.com/requests/26-255

### Dates

Received

September 01, 2026 via web

### Requester

Tammy Beckman

beckmantammylynn@gmail.com

1219 main street apt 508, Buffalo, NY, 14209

7169080387

### Additional information

Are You an Individual Seeking Data About Yourself?

YES

Do You Want to Exclude Newsletters & Similar Media?

No data entered

### Invoices

No invoices due

### Staff assigned

Departments

No departments available

Point of contact
Data Practices Team

## Request

TO:

Data Practices Compliance Officer

Office of the Minnesota Attorney General

Charities Division

445 Minnesota Street, Suite 1200

St. Paul, MN 55101

RE: Minnesota Government Data Practices Act (MGDPA) Request – "Data on Me"

Dear Data Practices Compliance Officer,

Pursuant to the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. § 13.04, I am requesting access to and copies of all data maintained by the Attorney General's Office that classifies me as the subject ("data on me").

Specifically, I am requesting all files, internal notes, intake documents, data logs, and exter...

Show more

## TimelineDocuments

Requester + Staff

### Message to requester

The AGO has received your request. Thank you.

September 1, 2026, 10:35am

Anyone with access to this request

### Request opened

Request received via web
September 1, 2026, 10:35am by the requester

# Request 26-256

Open

## Dates
Received
September 01, 2026 via web

## Requester

Tammy Beckman

beckmantammylynn@gmail.com

1219 main street apt 508, Buffalo, NY, 14209

7169080387

## Additional information
Are You an Individual Seeking Data About Yourself?
No data entered

Do You Want to Exclude Newsletters & Similar Media?
No data entered

## Invoices
No invoices due

## Staff assigned
Departments

No departments available
Point of contact
Data Practices Team

## Request

TO:

Data Practices Compliance Officer

Office of the Minnesota Attorney General

Charities Division

445 Minnesota Street, Suite 1200

St. Paul, MN 55101

RE: Minnesota Government Data Practices Act (MGDPA) Request – "Data on Me"

Dear Data Practices Compliance Officer,

Pursuant to the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. § 13.04, I am requesting access to and copies of all data maintained by the Attorney General's Office that classifies me as the subject ("data on me").

Specifically, I am requesting all files, internal notes, intake documents, data logs, and exter...

Show more

## TimelineDocuments

Requester + Staff

### Message to requester

The AGO has received your request. Thank you.

September 1, 2026, 10:41am

Anyone with access to this request

### Request opened

Request received via web
September 1, 2026, 10:41am by the requester

# Your record request #26-256 has been submitted successfully.

The AGO has received your request. Thank you.

View Request 26-256

[redacted]

https://mnago.nextrequest.com/requests/26-256

07/21/26

Your confirmation number is:

# 301-24550496088

**Please print this page or write down this number for future reference.**

Your report will be reviewed by a Justice Center call center representative. If needed, the representative will call you to gather additional information. You may be required to provide the incident report confirmation number to ensure that the Justice Center representative is speaking with the correct individual. If needed, you may also add additional details to your report by calling the hotline (1-855-373-2122) and providing your name and confirmation number.

**If you have any documentation, evidence, or photos that relate to the incident you just reported, please upload them here**

| | |
|---|---|
| Reference No: | R003702-072126 |
| Account: | GettheBuzz716@gmail.com |

The NYS Department of Health received a FOIL request from you on July 21, 2026. You requested:

"Freedom of Information Law (FOIL) / Public Records Access Request TO: Records Access Officer / Custodian of Records 2021-2026 all files DATE: July 17, 2026 RE: Mandatory Records Request Regarding 1219 Main

Street, Buffalo, NY, and Associated Entities You are hereby commanded to perform a thorough, exhaustive search of your agency's electronic databases, legacy filing systems, archival systems, and physical field offices for any and all complaints, case files, investigation logs, and enforcement files generated by, or concerning, the individuals, entities, and addresses listed in Section I of the primary master request. This mandatory request strictly encompasses: 1. All Case Records & Investigation Logs [?] The complete, unredacted file for any past or active investigation, enforcement action, or consumer/tenant/housing complaint. [?] All field investigator notebooks, handwritten clerk notes, phone logs, intake screening forms, and intake interview memos. [?] All files concerning the scheduling, execution, or post-action evaluation of physical building walkthroughs and structural compliance audits. 2. Internal and Inter-Agency Communications [?] All emails, text messages, Microsoft Teams logs, internal memos, and correspondence between your agency staff regarding the target entities (Artspace, Belmont, BURA) or the applicant (Tammy Beckman). [?] All external communications sent to or received from the City of Buffalo Department of Permit and Inspection Services, the Erie County Department of Health, the Buffalo Police Department, or out-of-state parent corporate networks. 3. Digital Audio, Video, and Evidence Tracks [?] All digital audio recordings, video clips, or body-worn camera footage gathered during field interactions, building walkthroughs, or multi-agency meetings. [?] All metadata logs, database entry historical tracks, or electronic "case notes" entered by caseworkers, analysts, or legal departments inside your electronic case tracking systems (including legacy state mainframes). 4. Administrative or Legal Dismissals [?] If any case file or complaint file was closed, rejected, or summarily dismissed without a full hearing, provide the exhaustive legal rationale, internal decision-making documentation, and the signed, unredacted authorization order from the final approving policy maker. Section I: Target Individuals, Entities, and Address of Record To facilitate an exhaustive system-wide search, the specific targets of this request are defined as follows: [?] Requester / Subject Individual: o Tammy Beckman o Freedom Welch o Samantha Hall/ Pet [?] Target Target Property Address: o 1219 Main Street, Apt. 508, Buffalo, NY 14209 (Artspace Buffalo Lofts) [?] Associated Corporate & Municipal Entities: o Artspace Projects, Inc. / Artspace Affordable Family Housing I, L.P. o Belmont Housing Resources for WNY, Inc. o Buffalo

Urban Renewal Agency (BURA) Please send all responsive records, tracking details, and statutory determinations electronically to the email address listed below. If fee waivers apply to public-interest pro se litigants or whistleblowers, please apply them accordingly. Respectfully Submitted, Tammy Beckman 1219 Main Street, Apt. 508 Buffalo, NY 14209 Phone: 716-908-0387 Email: beckmantammylynn@gmail.com"

Your request is acknowledged by the Records Access Office of the New York State Department of Health and, if appropriate, will be forwarded to the responsive program area(s) to identify documents that are responsive to your request.

A determination as to whether your request is granted or denied will be reached in approximately 20 business days, on August 19, 2026. We will notify you in writing if the responsible program area(s) should require additional time to locate, assemble and review documents that may be responsive to your request.

You can monitor the progress of your request in the My Records Center and you will receive an email when your request has been completed.

| | |
|---|---|
| Reference No: | R003702-072126 |
| Account: | GettheBuzz716@gmail.com |

## Status Update for Request #26-FI-RO2-02329

Inbox

noreply@ains.com

8:05 PM (1 minute ago)

to me

Dear Tammy Beckman,

The status of your FOIA request #26-FI-RO2-02329 has been updated to the following status 'Received'. To log into the HUD FOIA Public Access Website click on the Application URL below.

https://hud.secureocp.com

Sincerely,
U.S. Department of Housing and Urban Development

**HUD.GOV**

**U.S. Department of Housing and Urban Development**

- 
- **My Account**
- **Change Password**
- **Message Inbox (0)**

- **Sign Out**
- **Help**
- **Home**
- **FOIA Library**
- **Check Request Status**
- **Submit Request**
- **Submit Appeal**

**Submit Request**

***Request Submitted Successfully***

*An email notification with the request tracking number has been sent to the email address provided in your requester profile. To view your request history click on the link below or use the navigations options in the toolbar above.*

Request History

**Privacy Act Statement (PAS)**

**Authority:** The collection and maintenance of accommodation records is authorized by Sections 2 and 7(d) of the Department of Housing and Urban Development Act of 1965, Pub. L. 89-174, 42 U.S.C. §§ 3531, 3535(d); The Freedom of Information Act, Pub. L. 89-487, as amended, 5 U.S.C. § 552..

**Purpose:** The FMS2 will help HUD to track correspondence both internally among program offices and those received externally from outside entities. This system will enable HUD to track FOIA inquiries (internal and external) to HUD.

**Routine Use(s):** See SORN at the following link: https://www.federalregister.gov/documents/2024/06/27/2024-14139/privacy-act-of-1974-system-of-records

**Disclosure:** The PII collection is voluntary. Individuals can refuse to provide their PII, thereby withdrawing from submitting the request.

**System of Records Notice:** FOIA Management System (FMS2), HUD/ADM-11 - https://www.federalregister.gov/documents/2024/06/27/2024-14139/privacy-act-of-1974-system-of-records

**U.S. Department of Housing and Urban Development** | 451 7th Street S.W., Washington, DC 20410 |
Telephone: (202) 708-3866 TTY: (202) 708-1455

Request or subpoena documents tied to:

- EIN **35-2248133** (LP owner)
- EIN **35-2248130** (GP control)
- EIN **75-3201620** (nonprofit sponsor)

Specifically:

- Form 1065 (LP tax returns)
- Schedule K-1 (ownership/investors)
- LIHTC filings (Form 8609)
- HCR compliance records
- partnership agreements

NYS OAG FOIL Request Center

Submission Confirmation

The above-referenced request has been submitted. You will receive an automated email reply confirming your submission shortly.

If you do not receive the automated confirmation, please check your spam filter for a message from nyag@mycusthelp.net. To ensure you receive future email messages from this address, please add nyag@mycusthelp.net to your address book and/or approved sender list.

Within five business days, you will receive a written acknowledgment of the receipt of your request with a statement of the approximate date when your request will be granted or denied.

Crisis services inc

| | |
|---|---|
| Reference No: | C031286-072126 |
| Requestor Email Address: | GettheBuzz716@gmail.com |

| | |
|---|---|
| Reference No: | R000833-072126 |

| | |
|---|---|
| Accoun t: | GettheBuzz716@gmail.com |

NYS OAG FOIL Request Center

Submission Confirmation

The above-referenced request has been submitted. You will receive an automated email reply confirming your submission shortly.

If you do not receive the automated confirmation, please check your spam filter for a message from nyag@mycusthelp.net. To ensure you receive future email messages from this address, please add nyag@mycusthelp.net to your address book and/or approved sender list.

Within five business days, you will receive a written acknowledgment of the receipt of your request with a statement of the approximate date when your request will be granted or denied.

| | |
|---|---|
| Reference No: | C031282-072126 |
| Requestor Email Address: | GettheBuzz716@gmail.com |

NYS OAG FOIL Request Center

Submission Confirmation

The above-referenced request has been submitted. You will receive an automated email reply confirming your submission shortly.

If you do not receive the automated confirmation, please check your spam filter for a message from nyag@mycusthelp.net. To ensure you receive future email messages from this address, please add nyag@mycusthelp.net to your address book and/or approved sender list.

Within five business days, you will receive a written acknowledgment of the receipt of your request with a statement of the approximate date when your request will be granted or denied.

| | |
|---|---|
| Reference No: | C031283-072126 |
| Requestor Email Address: | GettheBuzz716@gmail.com |

Submission Confirmation

The above-referenced request has been submitted. You will receive an automated email reply confirming your submission shortly.

If you do not receive the automated confirmation, please check your spam filter for a message from nyag@mycusthelp.net. To ensure you receive future email messages from this address, please add nyag@mycusthelp.net to your address book and/or approved sender list.

Within five business days, you will receive a written acknowledgment of the receipt of your request with a statement of the approximate date when your request will be granted or denied.

| | |
|---|---|
| Reference No: | C031284-072126 |
| Requestor Email Address: | GettheBuzz716@gmail.com |

Submission Confirmation

The above-referenced request has been submitted. You will receive an automated email reply confirming your submission shortly.

If you do not receive the automated confirmation, please check your spam filter for a message from nyag@mycusthelp.net. To ensure you receive future email messages from this address, please add nyag@mycusthelp.net to your address book and/or approved sender list.

Within five business days, you will receive a written acknowledgment of the receipt of your request with a statement of the approximate date when your request will be granted or denied.

| | |
|---|---|
| Reference No: | C031285-072126 |
| Requestor Email Address: | GettheBuzz716@gmail.com |

**BUFFALO POLICE DEPARTMENT**
**SUPPLEMENTAL INCIDENT / COMPLAINT STATEMENT**

**Reporting Person:** Tammy Beckman
**Primary Location:** 1219 Main Street, Buffalo, New York
**Period Covered:** 2024–Present recent incidents Sept 6, 2026, August 2026 ,June 23, 2026, April 2026
**Purpose:** Documentation of continuing harassment, alleged retaliation, threats, safety concerns, property damage, reported suspicious activity, and preservation of evidence.

Final Timeline submitted Sept 2026-as per doj, NYag, NYOIG, dhs, fbi, hud/oig, congressional/ oig, GOP intake may 2025 also submitted in 2025/9/17 to Union counsel/greivance pending federal

## 1. PURPOSE OF THIS REPORT

I am submitting this statement to formally document continuing incidents affecting myself, my protected daughter, Freedom Welch, and my pet while residing at **1219 Main Street / Artspace Buffalo**.

I am specifically limiting my personal account to the period beginning when I moved into 1219 Main Street in approximately **September 2024 through the present**. I cannot personally attest to activity occurring before I moved into the property unless I identify it as information later reported to me by another person or contained in records.

I have reported concerns locally and to appropriate management and government authorities. My purpose has been to report what I personally observed and what others reported to me, not to determine guilt or conduct an independent investigation.

## 2. CAO/DART, BSI SECURITY, AND 1219 MAIN STREET

CAO/DART operates or provides services in the area of 1219 Main Street. **BSI Security, Inc.** has provided security services associated with the property and, on occasions, security personnel have also been assigned to **1219 Main Street**.

I have made reports concerning incidents occurring on or around the property and have not consistently received follow-up. I have specifically provided my contact information so that I could be contacted concerning incidents including:

- reported violence and/or stabbing incidents;
- doors being left open or unsecured;

- suspected drug use;
- persons sleeping in hallways/common areas;
- activity occurring after client or business hours;
- activity in or around the rear parking area;
- safety concerns involving residents, visitors, and individuals accessing the property.

I request that police obtain and preserve applicable security reports, incident logs, communications, employee assignments, and available surveillance relating to these reports.

## 3. SECURITY-PROTOCOL CONCERNS

On at least one occasion, security/staff assigned to 1219 Main Street requested that I allow them access to the property. I subsequently reported the circumstances to Belmont/management because I believed established access and security protocols may not have been followed.

I also reported information concerning allegations that certain security/staff personnel may have engaged in conduct including suspected marijuana/cannabis smoking, leaving their assigned post early, or sleeping while assigned to security duties. These are allegations that I reported to management and request be independently investigated through employment/security records rather than treated as established facts.

I am requesting preservation and review of applicable BSI and property-management records concerning security staffing, access procedures, incident reports, complaints, and surveillance.

## 4. LOCAL BUSINESSES AND REPORTED ACTIVITY

I have also reported concerns involving **Oasis Fashion & Footwear / Store 44** and neighboring commercial operations on Main Street. There is a hair-related business and another business next door that, from my observations, appears to operate similarly to a small convenience/bodega-type establishment.

I previously reported concerns to local law enforcement, including the Police Commissioner, concerning allegations that cannabis and cigarettes may have been sold or distributed in the area. I also submitted information to DHS, DEA, and the New York State Cannabis authorities.

I am not stating that any particular business or individual has committed a crime. I am requesting that any reported activity be independently verified through appropriate records, surveillance, licensing information, witness statements, and other evidence.

## 5. INFORMATION REPORTED BY NEIGHBORS, HOMEOWNERS, BLOCK CLUB MEMBERS, AND CLIENTS

Multiple neighboring homeowners, residents, and block club members have told me that they have independently reported concerns regarding activity around 1219 Main Street / Artspace, including suspected drug use, discarded needles, trash, smoking, dog feces, loitering, and activity occurring after client hours.

I was also shown by certain individuals who identified themselves as CAO/DART clients alleged access points and locations where they claimed suspicious or illegal activity was occurring. I recorded some of what was shown to me, and portions are preserved in my video exhibits.

I understand that these individuals have their own firsthand knowledge or observations. I am reporting their statements to police so that the appropriate authorities can interview them directly rather than relying solely on my account.

A CAO/DART representative also stated during a meeting in 2025 that she was aware of alleged activity and asked whether I knew of an apartment where such activity was occurring. At that time, I had only recently moved into the building.

## 6. OTHER WITNESSES / COMMUNITY REPORTING

Individuals I have spoken with have indicated that they have independently raised concerns with law enforcement or other governmental authorities. This includes individuals associated with nearby homes/businesses and community members.

Individuals who have told me they have made reports include, among others:

- Linda, a resident in the Coe Avenue area;
- management associated with Delta Sonic;
- a store owner in the Main Street/Best Street area;
- local homeowners and block club members.

I understand that these individuals may have their own statements, records, photographs, or other evidence. I request that police independently contact or obtain statements from appropriate witnesses rather than treating my characterization of their reports as proof.

## 7. REPORTS CONCERNING TENANTS, VISITORS, AND COMMON AREAS

I have previously reported verbal threats to police, including reports made in **2025**, and I also sent notice to Buffalo Police Headquarters.

I have concerns involving activity associated with residents and guests of the building, including reported incidents involving **Apartment 505** and **Apartment 507**.

With respect to Apartment 505 and associated guests, I have reported alleged false crisis/ emergency calls, verbal confrontations, reported violence in common areas, and information concerning a prior stabbing/domestic incident that I believe may be documented in police records. I also have audio and other evidence relating to reported threats or violence and request that police review and authenticate the evidence as appropriate.

With respect to Apartment 507 and the resident's son, I have reported verbal threats of violence, harassment, alleged false police reporting, and statements that I believe were defamatory. I request that these matters be documented and independently investigated based upon police records, communications, witnesses, and other evidence.

## 8. HARASSMENT, DEFAMATION, AND RETALIATION

I have experienced continuing conduct that I believe constitutes harassment and retaliation, including unwanted communications, banging on walls, verbal confrontations, alleged defamatory statements, references to police that I perceived as intimidating or threatening, and other conduct occurring in or around my residence.

I have also reported concerns involving **Hair by Ken / Apartment 509**, including repeated banging on walls and communications containing allegations concerning racism, antisemitism, harassment, and defamation, as well as references to police that I perceived as being used or invoked as a threat.

I request that the legal identity of the individual associated with Apartment 509 be confirmed through property records rather than relying upon an informal name or assumption.

I also request that police document communications and conduct involving the tenant, the tenant's son, guests, and other persons who may have participated in or witnessed the reported incidents.

## 9. PROTECTED DAUGHTER / UNWANTED QUESTIONS

My daughter, **Freedom Welch, is a protected person**. She has reported being questioned about my employment, whether we receive Section 8 or other housing assistance, and whether I am a federal employee.

She has also reported being solicited regarding marijuana/cannabis by individuals she identified as tenants and/or persons associated with Store 44.

I request that any such interactions involving my daughter be documented and independently investigated where appropriate, particularly if they are connected to a pattern of harassment, intimidation, retaliation, or unwanted contact.

## 10. NOISE / QUALITY-OF-LIFE AND PROPERTY CONCERNS

I have also experienced ongoing quality-of-life concerns, including a dog barking for extended periods, activity in hallways/common areas, people sleeping in hallways, doors being left open, loitering, suspected drug use, discarded needles, smoking, trash, and activity in the rear parking area after hours.

I have reported these concerns to management and/or law enforcement when appropriate.

I also have photographs and video concerning property conditions and an incident in which artwork/property was slashed or damaged. I request that the property damage be documented and investigated.

## 11. SUSPICIOUS CALLS / CLAIMED FEDERAL AFFILIATION

I have received suspicious telephone communications from individuals who claimed or conveyed that they were associated with the FBI or federal law enforcement.

I do **not** know whether these individuals were actually federal law-enforcement personnel. I am specifically requesting independent verification of the caller's identity, affiliation, purpose, and connection, if any, to any pending matter.

I do not want police to assume that the caller was impersonating federal personnel; I am requesting that this be investigated and documented based upon the available call records, audio, telephone information, and other evidence.

## 12. FEDERAL / STATE REPORTING AND GOVERNMENTAL REVIEWS

I have been advised of, and have submitted information concerning, governmental inquiries and reviews involving matters that I previously reported.

More recently, I have submitted information and requested timelines/materials to federal and state authorities, including DOJ, DHS/OIG, FBI personnel in Washington, D.C. and New York, NY OIG, and congressional oversight/intake channels.

I have complied with requests for timelines and supporting materials and have provided information that I had available.

I have also reported matters locally first. My position has consistently been that residents and citizens should report safety concerns to local law enforcement and appropriate local authorities rather than attempting to conduct a federal investigation themselves.

## 13. TIMELINE AND LIMITATION OF MY PERSONAL KNOWLEDGE

For purposes of this report, my personal account begins when I moved into 1219 Main Street in approximately **September 2024**.

I cannot testify from personal knowledge regarding activity occurring before I lived at the property. If I reference activity predating my residence, it is because another person reported it to me or because I later became aware of information through records or governmental inquiries.

I first reported local concerns during 2025 and subsequently provided information to additional governmental authorities as matters developed.

I have been informed that certain federal inquiries/reviews are pending or have occurred. I have provided the information requested of me and understand that governmental agencies will independently determine what, if anything, occurred.

## 14. REQUEST FOR INVESTIGATION AND EVIDENCE PRESERVATION

Because these incidents are ongoing and because related governmental reviews and litigation are pending, I respectfully request:

1. That this statement be entered into the appropriate police records;
2. That I receive an incident/report number;
3. That available surveillance from 1219 Main Street, hallways, entrances, exits, common areas, parking areas, and surrounding locations be preserved;
4. That BSI Security, property-management, CAO/DART, and other relevant incident reports and communications be preserved;
5. That relevant call records, police reports, crisis-call records, texts, emails, audio, photographs, and video be preserved where legally obtainable;
6. That witnesses and persons identified as having firsthand knowledge be independently interviewed;
7. That reported threats, property damage, harassment, intimidation, false reports, and suspicious calls be independently investigated;
8. That any allegations involving illegal drugs, cannabis sales, unauthorized commercial activity, or other criminal conduct be independently verified rather than presumed true or false;
9. That any subsequent incidents involving me, my daughter, or my property be documented as potentially related only where the evidence supports such a connection.

## 15. REQUEST TO CEASE UNWANTED CONTACT / ESCALATION

I am requesting documentation and appropriate intervention concerning continuing unwanted communication, harassment, intimidation, threats, retaliation, and unnecessary contact involving myself, my protected daughter, and my pet.

I am not asking police to presume that every interaction is criminal. I am asking that repeated conduct be documented so that individual incidents can be evaluated in their full context.

I request that involved persons refrain from unnecessary direct contact, threats, intimidation, harassment, or confrontational conduct toward me, my daughter, or my property, except where communication is legally required or conducted through appropriate legal or governmental channels.

## 16. GOOD-FAITH REPORTING

I have attempted to follow the appropriate reporting process. As a tenant and member of the Buffalo community, I believe residents have a responsibility to report safety concerns and support lawful community policing.

My intention has been **"see something, say something."** I have reported what I personally observed and clearly identified information that was reported to me by others as allegations.

I am not asking the Buffalo Police Department to adopt my conclusions. I am asking that the reported conduct be documented, investigated independently, and preserved because of the continuing nature of the incidents and the existence of related governmental reviews and proceedings.

I reserve all rights concerning retaliation, harassment, threats, intimidation, property damage, defamation, knowingly false reporting, and any other unlawful conduct established by competent evidence.

**I certify that this statement accurately reflects my present recollection and the information available to me to the best of my knowledge.**

**Reporting Person:** Tammy Beckman
**Date:** ____________________
**Signature:** _____________________________
**Preferred Contact:** ______________________

**Police Incident/Report No.:** ______________________
**Officer/Supervisor Receiving Report:** ______________________
**Date Received:** ______________________

*(Date)* September 7, 2026

**BUFFALO POLICE DEPARTMENT**
**SUPPLEMENTAL INCIDENT / COMPLAINT STATEMENT**

**Reporting Person:** Tammy Beckman
**Primary Location:** 1219 Main Street, Buffalo, New York
**Period Covered:** 2024–Present recent incidents Sept 6, 2026, August 2026 ,June 23, 2026, April 2026
**Purpose:** Documentation of continuing harassment, alleged retaliation, threats, safety concerns, property damage, reported suspicious activity, and preservation of evidence.

Final Timeline submitted Sept 2026-as per doj, NYag, NYOIG, dhs, fbi, hud/oig, congressional/ oig, GOP intake may 2025 also submitted in 2025/9/17 to Union counsel/greivance pending federal, also report to internal affairs, and police b district.

## 1. PURPOSE OF THIS REPORT

I am submitting this statement to formally document continuing incidents affecting myself, my protected daughter, Freedom Welch, and my pet while residing at **1219 Main Street / Artspace Buffalo**.

I am specifically limiting my personal account to the period beginning when I moved into 1219 Main Street in approximately **September 2024 through the present**. I cannot personally attest to activity occurring before I moved into the property unless I identify it as information later reported to me by another person or contained in records.

I have reported concerns locally and to appropriate management and government authorities. My purpose has been to report what I personally observed and what others reported to me, not to determine guilt or conduct an independent investigation.

## 2. CAO/DART, BSI SECURITY, AND 1219 MAIN STREET

CAO/DART operates or provides services in the area of 1219 Main Street. **BSI Security, Inc.** has provided security services associated with the property and, on occasions, security personnel have also been assigned to **1219 Main Street**.

I have made reports concerning incidents occurring on or around the property and have not consistently received follow-up. I have specifically provided my contact information so that I could be contacted concerning incidents including:

- reported violence and/or stabbing incidents;
- doors being left open or unsecured;

- suspected drug use;
- persons sleeping in hallways/common areas;
- activity occurring after client or business hours;
- activity in or around the rear parking area;
- safety concerns involving residents, visitors, and individuals accessing the property.

I request that police obtain and preserve applicable security reports, incident logs, communications, employee assignments, and available surveillance relating to these reports.

## 3. SECURITY-PROTOCOL CONCERNS

On at least one occasion, security/staff assigned to 1219 Main Street requested that I allow them access to the property. I subsequently reported the circumstances to Belmont/management because I believed established access and security protocols may not have been followed.

I also reported information concerning allegations that certain security/staff personnel may have engaged in conduct including suspected marijuana/cannabis smoking, leaving their assigned post early, or sleeping while assigned to security duties. These are allegations that I reported to management and request be independently investigated through employment/security records rather than treated as established facts.

I am requesting preservation and review of applicable BSI and property-management records concerning security staffing, access procedures, incident reports, complaints, and surveillance.

## 4. LOCAL BUSINESSES AND REPORTED ACTIVITY

I have also reported concerns involving **Oasis Fashion & Footwear / Store 44** and neighboring commercial operations on Main Street. There is a hair-related business and another business next door that, from my observations, appears to operate similarly to a small convenience/bodega-type establishment.

I previously reported concerns to local law enforcement, including the Police Commissioner, concerning allegations that cannabis and cigarettes may have been sold or distributed in the area. I also submitted information to DHS, DEA, and the New York State Cannabis authorities.

I am not stating that any particular business or individual has committed a crime. I am requesting that any reported activity be independently verified through appropriate records, surveillance, licensing information, witness statements, and other evidence.

## 5. INFORMATION REPORTED BY NEIGHBORS, HOMEOWNERS, BLOCK CLUB MEMBERS, AND CLIENTS

Multiple neighboring homeowners, residents, and block club members have told me that they have independently reported concerns regarding activity around 1219 Main Street / Artspace, including suspected drug use, discarded needles, trash, smoking, dog feces, loitering, and activity occurring after client hours.

I was also shown by certain individuals who identified themselves as CAO/DART clients alleged access points and locations where they claimed suspicious or illegal activity was occurring. I recorded some of what was shown to me, and portions are preserved in my video exhibits.

I understand that these individuals have their own firsthand knowledge or observations. I am reporting their statements to police so that the appropriate authorities can interview them directly rather than relying solely on my account.

A CAO/DART representative also stated during a meeting in 2025 that she was aware of alleged activity and asked whether I knew of an apartment where such activity was occurring. At that time, I had only recently moved into the building.

## 6. OTHER WITNESSES / COMMUNITY REPORTING

Individuals I have spoken with have indicated that they have independently raised concerns with law enforcement or other governmental authorities. This includes individuals associated with nearby homes/businesses and community members.

Individuals who have told me they have made reports include, among others:

- Linda, a resident in the Coe Avenue area;
- management associated with Delta Sonic;
- a store owner in the Main Street/Best Street area;
- local homeowners and block club members.

I understand that these individuals may have their own statements, records, photographs, or other evidence. I request that police independently contact or obtain statements from appropriate witnesses rather than treating my characterization of their reports as proof.

## 7. REPORTS CONCERNING TENANTS, VISITORS, AND COMMON AREAS

I have previously reported verbal threats to police, including reports made in **2025**, and I also sent notice to Buffalo Police Headquarters.

I have concerns involving activity associated with residents and guests of the building, including reported incidents involving **Apartment 505** and **Apartment 507**.

With respect to Apartment 505 and associated guests, I have reported alleged false crisis/ emergency calls, verbal confrontations, reported violence in common areas, and information concerning a prior stabbing/domestic incident that I believe may be documented in police records. I also have audio and other evidence relating to reported threats or violence and request that police review and authenticate the evidence as appropriate.

With respect to Apartment 507 and the resident's son, I have reported verbal threats of violence, harassment, alleged false police reporting, and statements that I believe were defamatory. I request that these matters be documented and independently investigated based upon police records, communications, witnesses, and other evidence.

## 8. HARASSMENT, DEFAMATION, AND RETALIATION

I have experienced continuing conduct that I believe constitutes harassment and retaliation, including unwanted communications, banging on walls, verbal confrontations, alleged defamatory statements, references to police that I perceived as intimidating or threatening, and other conduct occurring in or around my residence.

I have also reported concerns involving **Hair by Ken / Apartment 509**, including repeated banging on walls and communications containing allegations concerning racism, antisemitism, harassment, and defamation, as well as references to police that I perceived as being used or invoked as a threat.

I request that the legal identity of the individual associated with Apartment 509 be confirmed through property records rather than relying upon an informal name or assumption.

I also request that police document communications and conduct involving the tenant, the tenant's son, guests, and other persons who may have participated in or witnessed the reported incidents.

## 9. PROTECTED DAUGHTER / UNWANTED QUESTIONS

My daughter, **Freedom Welch, is a protected person**. She has reported being questioned about my employment, whether we receive Section 8 or other housing assistance, and whether I am a federal employee.

She has also reported being solicited regarding marijuana/cannabis by individuals she identified as tenants and/or persons associated with Store 44.

I request that any such interactions involving my daughter be documented and independently investigated where appropriate, particularly if they are connected to a pattern of harassment, intimidation, retaliation, or unwanted contact.

## 10. NOISE / QUALITY-OF-LIFE AND PROPERTY CONCERNS

I have also experienced ongoing quality-of-life concerns, including a dog barking for extended periods, activity in hallways/common areas, people sleeping in hallways, doors being left open, loitering, suspected drug use, discarded needles, smoking, trash, and activity in the rear parking area after hours.

I have reported these concerns to management and/or law enforcement when appropriate.

I also have photographs and video concerning property conditions and an incident in which artwork/property was slashed or damaged. I request that the property damage be documented and investigated.

## 11. SUSPICIOUS CALLS / CLAIMED FEDERAL AFFILIATION

I have received suspicious telephone communications from individuals who claimed or conveyed that they were associated with the FBI or federal law enforcement.

I do **not** know whether these individuals were actually federal law-enforcement personnel. I am specifically requesting independent verification of the caller's identity, affiliation, purpose, and connection, if any, to any pending matter.

I do not want police to assume that the caller was impersonating federal personnel; I am requesting that this be investigated and documented based upon the available call records, audio, telephone information, and other evidence.

## 12. FEDERAL / STATE REPORTING AND GOVERNMENTAL REVIEWS

I have been advised of, and have submitted information concerning, governmental inquiries and reviews involving matters that I previously reported.

More recently, I have submitted information and requested timelines/materials to federal and state authorities, including DOJ, DHS/OIG, FBI personnel in Washington, D.C. and New York, NY OIG, and congressional oversight/intake channels.

I have complied with requests for timelines and supporting materials and have provided information that I had available.

I have also reported matters locally first. My position has consistently been that residents and citizens should report safety concerns to local law enforcement and appropriate local authorities rather than attempting to conduct a federal investigation themselves.

## 13. TIMELINE AND LIMITATION OF MY PERSONAL KNOWLEDGE

For purposes of this report, my personal account begins when I moved into 1219 Main Street in approximately **September 2024**.

I cannot testify from personal knowledge regarding activity occurring before I lived at the property. If I reference activity predating my residence, it is because another person reported it to me or because I later became aware of information through records or governmental inquiries.

I first reported local concerns during 2025 and subsequently provided information to additional governmental authorities as matters developed.

I have been informed that certain federal inquiries/reviews are pending or have occurred. I have provided the information requested of me and understand that governmental agencies will independently determine what, if anything, occurred.

## 14. REQUEST FOR INVESTIGATION AND EVIDENCE PRESERVATION

Because these incidents are ongoing and because related governmental reviews and litigation are pending, I respectfully request:

1. That this statement be entered into the appropriate police records;
2. That I receive an incident/report number;
3. That available surveillance from 1219 Main Street, hallways, entrances, exits, common areas, parking areas, and surrounding locations be preserved;
4. That BSI Security, property-management, CAO/DART, and other relevant incident reports and communications be preserved;
5. That relevant call records, police reports, crisis-call records, texts, emails, audio, photographs, and video be preserved where legally obtainable;
6. That witnesses and persons identified as having firsthand knowledge be independently interviewed;
7. That reported threats, property damage, harassment, intimidation, false reports, and suspicious calls be independently investigated;
8. That any allegations involving illegal drugs, cannabis sales, unauthorized commercial activity, or other criminal conduct be independently verified rather than presumed true or false;
9. That any subsequent incidents involving me, my daughter, or my property be documented as potentially related only where the evidence supports such a connection.

## 15. REQUEST TO CEASE UNWANTED CONTACT / ESCALATION

I am requesting documentation and appropriate intervention concerning continuing unwanted communication, harassment, intimidation, threats, retaliation, and unnecessary contact involving myself, my protected daughter, and my pet.

I am not asking police to presume that every interaction is criminal. I am asking that repeated conduct be documented so that individual incidents can be evaluated in their full context.

I request that involved persons refrain from unnecessary direct contact, threats, intimidation, harassment, or confrontational conduct toward me, my daughter, or my property, except where communication is legally required or conducted through appropriate legal or governmental channels.

## 16. GOOD-FAITH REPORTING

I have attempted to follow the appropriate reporting process. As a tenant and member of the Buffalo community, I believe residents have a responsibility to report safety concerns and support lawful community policing.

My intention has been **"see something, say something."** I have reported what I personally observed and clearly identified information that was reported to me by others as allegations.

I am not asking the Buffalo Police Department to adopt my conclusions. I am asking that the reported conduct be documented, investigated independently, and preserved because of the continuing nature of the incidents and the existence of related governmental reviews and proceedings.

I reserve all rights concerning retaliation, harassment, threats, intimidation, property damage, defamation, knowingly false reporting, and any other unlawful conduct established by competent evidence.

**I certify that this statement accurately reflects my present recollection and the information available to me to the best of my knowledge.**

**Reporting Person:** Tammy Beckman
**Date:** ____________________
**Signature:** ______________________________
**Preferred Contact:** _______________________

**Police Incident/Report No.:** _______________________
**Officer/Supervisor Receiving Report:** _______________________
**Date Received:** _______________________

*(Date)* September 7, 2026

## 2. ABSENCE OF CLEANING SCHEDULES & BSI SECURITY TRANSPARENCY

- **Unannounced and Deficient Common-Area Cleaning:** Third-party contract cleaning is consistently deficient, hurried, and executed without published schedules. Tenants are given no notice regarding cleaning windows to clear corridor items or avoid wet surface hazards, directly contributing to slip-and-fall risks.
- **Security Guard Failures (BSI Security, Inc.):** Security personnel rotations remain unannounced and unmonitored. Guards have been repeatedly documented sleeping on duty, smoking marijuana on shift, and failing to record incident reports following violent hallway confrontations, leaving residents without basic physical safety oversight.
- **Freedom of Information (FOIL) & Records Demand:** Complete municipal FOIL requests and administrative subpoenas are pending for all third-party cleaning invoices, cleaning chemical specifications, BSI Security shift logs, and dispatch records for 1219 Main Street from 2024 to the present.

## 3. DISPARITY IN CRISIS RESPONSE AND WEAPONIZATION OF MENTAL HEALTH

- **Double Standard in Emergency Intervention:** When violent individuals engage in domestic fights, stabbing incidents, and erratic screaming in common corridors, management and security dispatch zero mental health intervention or crisis teams.
- **Weaponizing Crisis Calls Against a Reporting Tenant:** Conversely, when a former federal employee submits documented, verified complaints detailing code violations, toxic chemicals, and safety hazards, management coordinates bad-faith crisis dispatches and attempts to dismiss verified facts by labeling the reporting tenant as "mental."
- **Retaliatory Character Defamation:** Fabricating mental instability to deflect from corporate neglect constitutes unlawful administrative retaliation (**NY Real Property Law § 223-b**) and actionable defamation per se.

## 4. PUBLIC TAXPAYER SCRUTINY AND EXECUTIVE ACCOUNTABILITY

- **Taxpayer Subsidies vs. Substandard Conditions:** Public housing subsidies, Low-Income Housing Tax Credits (LIHTC), and charitable exemptions fund this property. The public record exposes a gross disparity between six-figure executive salaries (ranging from $142,000 to over $221,000 annually) and a facility plagued by unaddressed bloodborne biohazards, roof leaks, open drug traffic, and unmonitored security.
- **Public & Investigative Media Interest:** Media and investigative outlets tracking public records and tax disclosures have noted the sharp contrast between upper-management

compensation and the hazardous, unaddressed living conditions forced upon fixed-income residents and artists. Public taxpayers and regulatory agencies will hold leadership accountable for operating a publicly assisted property in this condition.

**Tammy Beckman**

*(Signature)* ______________________________

*(Printed Name)* Tammy Beckman

*(Date)* September 7, 2026